IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

WESTERN DIVISION

| | |
|---|---|
| NATIONAL ASSOCIATION OF THE DEAF, on behalf of its members, C. WAYNE DORE, CHRISTY SMITH, LEE NETTLES, and DIANE NETTLES, on behalf of themselves and a proposed class of similarly situated persons defined below, <br><br>       Plaintiffs, <br><br> v. <br><br> MASSACHUSETTS INSTITUTE OF TECHNOLOGY, <br><br>       Defendant. | CIVIL ACTION NO. <br><br> CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |

Plaintiffs, the National Association of the Deaf, on behalf of its members, and C. Wayne Dore, Christy Smith, Lee Nettles, and Diane Nettles, on behalf of themselves and a proposed class defined below, by and through undersigned counsel, file their Class Action Complaint for Declaratory and Injunctive Relief and respectfully allege as follows:

**INTRODUCTION**

1.     Defendant Massachusetts Institute of Technology ("MIT" or "the Institute" or "Defendant") makes available a variety of online content on websites that have received, to date, at least 125 million visitors.[1] MIT makes thousands of videos and audio tracks publicly available for free to anyone with an Internet connection, on broad-ranging topics of educational or general interest.  With only a few keystrokes, anyone can access videos ranging from campus talks by President Obama, Noam Chomsky and other "Laureates and Luminaries," to introductory classes

---

[1]     MIT, About OpenCourseWare, http://ocw.mit.edu/about/ (accessed February 3, 2015).

in topics such as computer programming, to higher-level classes in topics such as business and mathematics, to educational videos made by MIT students for use by K-12 students.

2.      While MIT claims to make this online content -- which constitutes important services, privileges and advantages that it provides to the general public -- "open and available to the world," it has largely denied access to this content to the approximately 48 million -- nearly one out of five -- Americans who are deaf or hard of hearing.  Many of these individuals require captioning to meaningfully access the audio component of online audiovisual and audio content.[2] Much of MIT's online content is either not captioned, or is inaccurately or unintelligibly captioned, making it inaccessible for individuals who are deaf or hard of hearing.  Just as buildings without ramps bar people who use wheelchairs, online content without captions excludes individuals who are deaf or hard of hearing.

3.      MIT is fully aware that captioning is necessary to make online content accessible to deaf and hard of hearing people.  Indeed, MIT, through its News Office, recognized years ago that "[c]losed captions make videos accessible to those who are deaf or hard of hearing . . . ."[3]

4.      Plaintiffs the National Association of the Deaf ("NAD"), on behalf of its members, and C. Wayne Dore, Christy Smith, Lee Nettles, and Diane Nettles, all on behalf of

---

[2]      *See, e.g.*, Resolution Letter in Case No. 15-13-6001 from U.S. Dep't of Educ., Office for Civil Rights, Region XV, to Santa J. Ono, President, at 9-10 (Dec. 18, 2014), http://www2.ed.gov/documents/press-releases/university-cincinnati-letter.pdf ("Captioning for the audio portion of a video is important, as individuals who are deaf or hard of hearing may not be able to hear the auditory content. Synchronized captioning is also necessary so that a person reading captions can watch the speakers on a video and associate relevant body language and actions with the speech."); World Wide Web Consortium (W3C)'s Web Content Accessibility Guidelines ("WCAG") 2.0, Understanding Success Criterion 1.2.2, http://www.w3.org/TR/UNDERSTANDING-WCAG20/media-equiv-captions.html (documenting that captions enable people who are deaf or hard of hearing to watch media).

[3]      Robyn Fizz, *With Move to Kaltura, MIT TechTV now supports closed captions*, MIT News (Dec. 2, 2010), http://newsoffice.mit.edu/2010/techtv-captions (accessed February 6, 2015).

themselves and a proposed class defined below, bring this civil rights action against Defendant

MIT to enforce the requirement of Section 504 of the Rehabilitation Act of 1973 ("Section 504")

that an educational institution receiving federal financial assistance -- such as the millions of

dollars in federal financial assistance that MIT receives each year -- must not deny persons with

disabilities the benefits of its programs and activities, an obligation that applies to "all of the

operations of . . . a college, university, or other postsecondary institution . . . ." 29 U.S.C. §

794(b)(2)(A).

    5.      Plaintiffs also seek to enforce Title III of the Americans with Disabilities Act

("Title III"), which requires, among other things, that a public accommodation: (1) not deny

persons with disabilities the benefits of its services, facilities, privileges and advantages; (2) not

provide such persons with benefits that are unequal to those provided to nondisabled persons; (3)

provide auxiliary aids and services -- including captioning -- where necessary to ensure effective

communication with individuals with a disability, and to ensure that such persons are not

excluded, denied services, segregated or otherwise treated differently than other individuals; and

(4) utilize administrative methods, practices and policies that provide persons with disabilities

equal access to its online content.  Under Title III, places of accommodation include an

"undergraduate, or postgraduate private school, or other place of education." 42 U.S.C. §

12181(7)(J).

    6.      Because Defendant MIT receives federal financial assistance and is a place of

public accommodation, it is subject to Section 504 and Title III.

    7.      By not providing captioning, MIT deprives deaf and hard of hearing individuals

the benefits of its online content, benefits afforded to nondisabled individuals, thereby increasing

the sense of isolation and stigma that Title III, as well as Section 504, were meant to redress for

individuals with disabilities.  As the Department of Justice has stated, "[b]eing unable to access websites puts individuals at a great disadvantage in today's society, which is driven by a dynamic electronic marketplace and unprecedented access to information."[4]

8.      Despite requests by the NAD to MIT to ensure that its online content has timely, accurate captioning, MIT has done so only with regard to a fraction of such content, and even then inadequately.

9.      MIT's denial of much of its publicly available online content to deaf and hard of hearing persons violates Section 504 and Title III.  Remedying these violations is critical to these statutes' goal of ensuring that people with disabilities have the same access that others take for granted.

10.     Accordingly, Plaintiffs seek injunctive and declaratory relief to ensure that deaf and hard of hearing individuals have equal, effective, and timely access to MIT's publicly available online content.

## JURISDICTION AND VENUE

11.     The claims alleged arise under Section 504 and Title III such that the jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343.  This Court has jurisdiction over Plaintiffs' claims for declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Rule 65 of the Federal Rules of Civil Procedure.

12.     Venue over Plaintiffs' claims is proper in the District of Massachusetts because Defendant resides in the District of Massachusetts within the meaning of 28 U.S.C. § 1391, and

---

[4]     U.S. Dep't of Justice, Statement of Eve L. Hill Before the Senate Comm. on Health, Educ., Labor & Pensions, at 3 (May 14, 2013), *available at* http://www.justice.gov/iso/opa/ola/witness/05-14-13-crt-hill-testimony-re-the-americans-with-disabilities-act-and-entertain.201372314.pdf.

because the events, acts, and omissions giving rise to Plaintiffs' claims occurred in the District of Massachusetts.

13.     Assignment to the Western Division is appropriate pursuant to Rule 40.1(D) of the Local Rules of the United States District Court for the District of Massachusetts.

## PARTIES

14.     Plaintiff the NAD is the nation's premier civil rights organization of, by, and for deaf and hard of hearing individuals.  The NAD is organized as a non-profit corporation under the laws of the State of Maryland and has its national headquarters in Silver Spring, Maryland. The NAD's membership includes individuals and associations from all fifty states and Washington, D.C.  The NAD is also the United States member of the World Federation of the Deaf, which comprises more than 120 national associations of deaf people.

15.      The NAD's mission is to preserve, protect and promote the civil, human and linguistic rights of deaf and hard of hearing people in the United States of America.  This mission includes ensuring that important tools of daily life -- such as websites conveying useful and educational information to the general public -- are accessible to deaf and hard of hearing people.

16.     The NAD furthers this mission in a variety of ways.  For example, the NAD provides guidance about effective captioning on its website and administers the Described and Captioned Media Program ("DCMP") through a cooperative agreement with the U.S. Department of Education.  The DCMP promotes equal access to communication and learning through described and captioned educational media.  The DCMP provides services designed to support and improve the academic achievement of students who are blind, visually impaired, deaf, hard of hearing, or deaf-blind.  The DCMP has a library of more than 4,000 titles of

described and captioned educational media available for loan to teachers, parents, and students who are deaf, blind, hard of hearing, visually impaired, or deaf-blind.

17.     Additionally, the NAD works for passage of legislation guaranteeing equal access and effective communication for individuals who are deaf and hard of hearing.  For example, the NAD has been instrumental in the passage of the Twenty-First Century Communications and Video Accessibility Act of 2010 ("CVAA"), P.L. No. 111-260.

18.     The NAD also devotes resources to educating its members and members of the public regarding their right to access educational programs by publishing position papers on its website.

19.     Further, NAD has strongly advocated for access to online video content through captioning of audio and audiovisual material in all distribution methods, including internet streaming and downloading.  NAD filed suit against Netflix, alleging that the company's failure to provide closed captioning on its streaming video content violated the ADA, which resulted in a consent decree requiring Netflix to provide captions on 100% of its on-demand streaming content by September 30, 2014.  *Nat'l Ass'n of the Deaf v. Netflix, Inc.*, No. 11-cv-30168-MAP (D. Mass. Oct. 11, 2012) (Dkt. No. 88).  Similarly, in June 2013, NAD announced that it was working with Apple on captioning of Apple's iTunes library of television and movie offerings to ensure that every title in the iTunes library will contain closed captioning or subtitles by June 2015.  More recently, the NAD reached an agreement with VUDU, Inc., for VUDU to caption 100% of its online content by January 16, 2015, and all newly acquired content thereafter.

20.     Plaintiff C. Wayne Dore is a resident of Amherst, Massachusetts. Mr. Dore is substantially limited in the major life activity of hearing, and he requires materials to be in an

accessible format -- including captioning -- to be able to participate in and receive the benefit of MIT's online content.

21.     Plaintiff Christy Smith is a resident of Colorado and is substantially limited in the major life activity of hearing.  Ms. Smith requires materials to be in an accessible format -- including captioning -- to be able to participate in and receive the benefit of MIT's online content.

22.     Plaintiff Lee Nettles is a member of NAD and is a resident of Westfield, Massachusetts.  Mr. Nettles is substantially limited in the major life activity of hearing, and he requires materials to be in an accessible format -- including captioning -- to be able to participate in and receive the benefit of MIT's online content.

23.     Plaintiff Diane Nettles is a member of NAD and is a resident of Westfield, Massachusetts.  Ms. Nettles is substantially limited in the major life activity of hearing, and she requires materials to be in an accessible format -- including captioning -- to be able to participate in and receive the benefit of MIT's online content.

24.     Defendant MIT is one of the country's most distinguished institutions of higher education.  Defendant MIT is a corporation incorporated and with a principal place of business in Massachusetts.

25.      On information and belief, MIT has received at all times relevant hereto, and continues to receive, significant federal financial assistance.  29 U.S.C. § 794(a)-(b).  This financial assistance has in the past included federal funding related to web accessibility and, separately, to study learning in the context of massive online open courses ("MOOCs").

26.     For example, MIT has received federal funding from the National Science Foundation to study, beginning in 2012, learning in the context of, and data generated by, MIT's first MOOC.[5]

27.     As an "undergraduate, or postgraduate private school," MIT is a place of public accommodation under the ADA. 42 U.S.C. § 12181(7)(J).

## FACTS APPLICABLE TO ALL CLAIMS

### I.      MIT's Online Content.

28.     MIT creates and produces online content that is made available for free to the general public, and also controls, maintains and/or administers webpages, websites and other Internet locations ("MIT Platforms") on which online content is made available to the general public.  For at least the last decade, MIT has made "open and available to the world" this online content, which consists of courses, as well as other educational and general interest content.[6] Millions of people across the globe now access the online content produced and/or made available by MIT.[7]

29.     MIT Platforms include without limitation:

   a.     MIT OpenCourseWare ("OCW");

   b.     MIT Video;

   c.     MIT on YouTube;

---

[5]     Lori Breslow et al., *Studying Learning in the Worldwide Classroom: Research into edX's First MOOC*, Res. & Prac. Assessment, Summer 2013, at 13, http://www.rpajournal.com/dev/wp-content/uploads/2013/05/SF2.pdf.

[6]     MIT, About OpenCourseWare, http://ocw.mit.edu/about/ (accessed February 3, 2015).

[7]     *Id.*

    d.      MIT on iTunes U;

    e.      MIT Museum's online content;

    f.      MIT TechTV; and

    g.      edX / MITx.

30.    Public comments on some of MIT's Platforms reveal the breadth of the audience benefitted by these videos and how enthusiastic that audience is for the opportunity to access the content.  For example, public comments on the computer science course that MIT makes available on iTunes U state, "Five stars for simply allowing me the opportunity to learn from such a great school."; "Welcome to the future of self taught education. I get the benefit of an amazing education and I don't have to take out $150,000 in student loans to pay for it!"; "Anyone who wants to be educated can have this information for free! Thank you MIT and Apple."; "I wanted to learn Python for a new project I was thinking about doing, so I figured I would give this course a chance since it is taught in Python. Very glad I did it . . . . It has changed the way I think about programming, and I am looking forward to taking the Algorithms course next."; "Wow. This is AMAZING!!! And he was right when he said you can't be under qualified. Im [sic] only 14 and learned a ton from this."; and "I attended law school. Soon after graduation I realized I had trained myself in arts outdated. Thanks to MIT for giving me the opportunity to 'attend' world class CS courses. Sharing is the beauty of the Internet."  Similarly, in response to the Lean Six Sigma video that MIT makes available on YouTube, public commenters note, "Please upload more videos. I really love to learn from your world class professors."; "please more videossssssssssssssssss"; and various commentators thanking MIT for

making the content publicly available.  Also of note among the comments on this video are

multiple requests for subtitles, *i.e.*, captioning.[8]

31.     In addition, via many of the MIT Platforms, including MIT Video, MIT Tech, and

MITx, MIT encourages and facilitates viewers sharing its online content on social media.

32.     However, much of the online content produced by MIT, and/or made available on

MIT Platforms, has no captioning, or has captioning that is so inaccurate as to make the content

inaccessible to deaf or hard of hearing individuals.

33.     MIT has frequently failed to provide accurate captioning to online content that it

creates and/or produces.

34.     Further, on information and belief, MIT uses administrative methods, practices,

procedures and policies which result in online content that it creates and/or produces failing to

have accurate captioning.

35.     Also on information and belief, MIT fails to have in place administrative

methods, practices, procedures and policies that ensure that online content that it creates and/or

produces has accurate captioning.

36.     MIT has also frequently failed to ensure that online content made available on

MIT Platforms has accurate captioning.

37.     On information and belief, MIT uses administrative methods, practices,

procedures and policies which result in online content lacking accurate captioning being made

available on MIT Platforms (regardless of whether that content was produced or created by

MIT).

---

[8]     MIT OpenCourseWare, Ses 1-2 | MIT 16.660 Introduction to Lean Six Sigma
Methods, January (IAP) 2008 (July 6, 2009), https://www.youtube.com/watch?v=PQspf3q12mo
(accessed February 3, 2015).

38.     MIT also on information and belief fails to have in place administrative methods, practices, procedures and policies that ensure that online content made available on MIT Platforms has accurate captioning.

39.     For example and without limitation, on information and belief, MIT has not attempted to require that online content created by MIT personnel or professors be accurately captioned as a condition of that content being made available on MIT Platforms.

40.     In addition, MIT often makes uncaptioned or inaccurately captioned online content available on its Platforms without itself first adding accurate captioning.

41.     A review of some examples of MIT's publicly available online content reveals the breadth of content available, the benefit that content confers to members of the general public, and that much of the benefit of that content is denied to deaf and hard of hearing persons because it does not have accurate captioning.

### A.     MIT OCW

42.     MIT describes its OpenCourseWare ("OCW") as a "web-based publication of virtually all MIT course content.  OCW is open and available to the world and is a permanent MIT activity."[9] MIT further states that "[t]hrough OCW, educators improve courses and curricula, making their schools more effective; students find additional resources to help them succeed; and independent learners enrich their lives and use the content to tackle some of our

---

[9]     MIT, About OpenCourseWare, http://ocw.mit.edu/about/ (accessed February 3, 2015); *accord* MIT OpenCourseWare, 2006 Program Evaluation Findings Report (June 5, 2006), at 1, *available at* http://ocw.mit.edu/ans7870/global/05_Prog_Eval_Report_Final.pdf (hereinafter "2006 Program Evaluation Findings Report) ("MIT OpenCourseWare (OCW) is a large-scale, web-based electronic publishing initiative, accessible on the Internet at ocw.mit.edu. Through OCW, MIT makes its core teaching materials—lecture notes, problem sets, syllabi, reading lists, simulations, etc.—openly available for non-commercial educational purposes. OCW publishes those materials in standards-based formats for anyone with access to the Internet.").

world's most difficult challenges, including sustainable development, climate change, and cancer eradication."[10]

43.     OCW's online content is not limited to students.  In fact, according to MIT, the majority of OCW's audience is *not* students.[11]

44.     As early as 2005, OCW's impact was clear: as of that date, "[i]ndividual educators and learners report high levels of current impact on their learning goals, and expectations for even higher impact in the future; institutions worldwide are both using MIT OpenCourseWare materials and publishing their own materials openly—with more than 2,000 courses representing over 50 institutions currently available online."[12]

45.     As of March 2014, there had been more than 150 million visits to the OCW website.[13]

46.     MIT OCW makes its content available on its own website, www.ocw.mit.edu, and also has a YouTube channel, further described below, that posts content.

47.     The courses available on OCW's website include video lectures and other materials, such as written course materials. Many of the video lectures are uncaptioned.  For example, no captions exist for several of the 26 lectures in the course the "Theory of City

---

[10]     MIT, About OpenCourseWare, http://ocw.mit.edu/about/ (accessed February 3, 2015).

[11]     MIT, Open CourseWare Site Statistics, http://ocw.mit.edu/about/site-statistics/ (accessed February 3, 2015).

[12]     2006 Program Evaluation Findings Report, at 1.

[13]     MIT, Site Statistics: Monthly Report for March 2014, http://ocw.mit.edu/about/site-statistics/monthly-reports/MITOCW_DB_2014_03.pdf (accessed February 3, 2015).

Form";[14] several of the 25 lectures in the course "Mathematics for Computer Science";[15] or any of the three lectures posted in a course titled "Documenting Science Through Video and New Media".[16]  Similarly, audio-only tracks entirely lack transcription for the 21 available lectures in a course on "Creating Video Games."[17]

     48.     On its OCW website, MIT makes available versions of its OCW courses translated into foreign languages; the translated versions average an additional 500,000 visits per month.[18] To provide these translations, MIT "has formally partnered with seven organizations

---

[14]     *See, e.g.*, MIT, Theory of City Form - Lecture 2, http://ocw.mit.edu/courses/architecture/4-241j-theory-of-city-form-spring-2013/video-lectures/lec-2-normative-theory-i-the-city-as-supernatural/ (accessed February 6, 2015); MIT, Theory of City Form – Lecture 3, http://ocw.mit.edu/courses/architecture/4-241j-theory-of-city-form-spring-2013/video-lectures/lec-3-normative-theory-ii-the-city-as-machine/ (accessed February 6, 2015); MIT, Theory of City Form – Lecture 8, http://ocw.mit.edu/courses/architecture/4-241j-theory-of-city-form-spring-2013/video-lectures/lec-8-transformations-i-london/ (accessed February 6, 2015).

[15]     *See, e.g.*, MIT, Mathematics for Computer Science – Lecture 2, http://ocw.mit.edu/courses/electrical-engineering-and-computer-science/6-042j-mathematics-for-computer-science-fall-2010/video-lectures/lecture-2-induction/ (accessed February 9, 2015); MIT, Mathematics for Computer Science – Lecture 7, http://ocw.mit.edu/courses/electrical-engineering-and-computer-science/6-042j-mathematics-for-computer-science-fall-2010/video-lectures/lecture-7-matching-problems/ (accessed February 9, 2015); MIT, Mathematics for Computer Science – Lecture 17, http://ocw.mit.edu/courses/electrical-engineering-and-computer-science/6-042j-mathematics-for-computer-science-fall-2010/video-lectures/lecture-17-counting-rules-ii/ (accessed February 9, 2015).

[16]     MIT, Documenting Science Through Video and New Media, http://ocw.mit.edu/courses/anthropology/21a-550j-dv-lab-documenting-science-through-video-and-new-media-fall-2012/lecture-and-lab-videos/ (accessed February 6, 2015).

[17]     MIT, Creating Video Games – Audio Lectures, http://ocw.mit.edu/courses/comparative-media-studies-writing/cms-611j-creating-video-games-fall-2013/audio-lectures/ (accessed February 6, 2015).

[18]     MIT, Translated Courses, http://ocw.mit.edu/courses/translated-courses/ (accessed February 3, 2015); Open CourseWare Site Statistics, http://ocw.mit.edu/about/site-statistics/ (accessed February 3, 2015).

that are translating OCW course materials into Spanish, Portuguese, Simplified Chinese, Traditional Chinese, Thai, Persian, Turkish, and Korean."[19] However, few closed captioned OCW courses are available and no American Sign Language translations of any OCW materials are available.

49.    MIT OCW also operates "Highlights for High School," which is posted on its OCW website and "features MIT OpenCourseWare materials that are most useful for high school students and teachers."[20] The teacher audience is intended for high school teachers, parents with homeschooled children, high school administrators, and "[a]nybody interested in high school education."[21] Uncaptioned videos are part of this program, for example, uncaptioned videos on an introduction to cognitive neuroscience.[22]

## B.    MIT Video

50.    MIT states that "[t]he MIT Video website — developed and maintained by the MIT News Office — aggregates and curates video produced by the Institute's offices, laboratories, centers and administration. This includes feature and editorial videos, event

---

[19]    MIT, Translated Courses, http://ocw.mit.edu/courses/translated-courses/ (accessed February 3, 2015).

[20]    MIT, Highlights for High School, http://ocw.mit.edu/high-school/ (accessed February 3, 2015).

[21]    MIT, Highlights for High School – For Teachers, http://ocw.mit.edu/high-school/more/for-teachers/ (accessed February 3, 2015).

[22]    MIT, Introduction to Cognitive Neuroscience – Video Lectures, http://ocw.mit.edu/high-school/biology/introduction-to-cognitive-neuroscience/video-lectures/ (accessed February 6, 2015).

recordings, academic content and more."[23]  The website has more than 150 channels and more than 12,000 videos.[24]

51.     MIT Video has many uncaptioned videos, including the following examples: a 2013 discussion presented by the MIT Center for International Studies in which MIT professor Noam Chomsky and civil rights lawyer Chase Madar discuss the leaks attributable to Chelsea (formerly Bradley) Manning; various talks focusing on the Arab World from a recent conference hosted by the Center for International Studies called the Starr Forum; a talk aimed at women scientists titled "How to Communicate to Establish Credibility and Authority Part 1"; a discussion with artist Olafur Eliasson; and a 2013 talk by a MIT graduate and budding brain researcher on "Participating in MOOCs."[25]

52.     Of the few MIT Video items that have captions, some of the captioning is unintelligible.  For example, a video of MIT professor and novelist Junot Diaz discussing his 2012 MacArthur Fellowship has only inaccurate, unintelligible captioning, as does a SXSW (South by Southwest) panel that included members of MIT's Computer Science and Artificial

---

[23]     MIT, About MIT Video, http://video.mit.edu/about/ (accessed February 6, 2015).

[24]     *Id.*

[25]     MIT, Book Talk – Chase Mador [sic] & Noam Chomsky, http://video.mit.edu/watch/book-talk-chase-mador-a-noam-chomsky-26036/ (accessed February 4, 2015); MIT, STARR Forum – Arab Spring and its Impact on the Israeli-Palestinian Conflict, http://video.mit.edu/watch/starr-forum-arab-spring-and-its-impact-on-the-israeli-palestinian-conflict-11113/ (accessed February 6, 2015); MIT, Center for International Studies Starr Forum – Libya: War and its Aftermath, http://video.mit.edu/watch/center-for-international-studies-starr-forum-libya-war-and-its-aftermath-10403/ (accessed February 6, 2015); MIT, How to Communicate to Establish Credibility and Authority Part 1, http://video.mit.edu/watch/how-to-communicate-to-establish-credibility-and-authority-part-1-25149/ (accessed February 6, 2015); MIT, Olafur Eliasson at MIT: The Art and Science of Solar Lights, http://video.mit.edu/watch/olafur-eliasson-at-mit-the-art-and-science-of-solar-lights-27704/ (accessed February 6, 2015); MIT, Participating in MOOCs, http://video.mit.edu/watch/participating-in-moocs-25044/ (accessed February 6, 2015).

Intelligence Laboratory ("CSAIL").[26]  Such unintelligible captioning fails to provide equal

access or effective communication for individuals who are deaf and hard of hearing.

### C.    **MIT on YouTube**

53.    MIT makes online content available through a number of channels on YouTube.

For example, the MIT News channel has, as of February 2015, more than 56,970 subscribers and

more than 18 million views; the MIT OCW channel has more than 661,000 subscribers and more

than 60 million views; MIT's CSAIL's channel has more than 15,400 subscribers and more than

2 million views; and MITK12 Videos, a channel "[s]erved up fresh from MIT's Office of Digital

Learning" that features STEM videos for K-12 students made by MIT students, has more than

21,400 subscribers and more than 2.8 million views.[27]  These numbers, and MIT's reach to a

global audience, are growing daily.

54.    Deaf and hard of hearing persons, however, are denied the benefit of many of

these videos.  For example, MIT has posted on YouTube a highlight video of a 2009 visit by

President Obama to campus that contains unintelligible captioning;[28] numerous lecture videos

---

[26]    MIT, Fiction Writer Junot Díaz: 2012 MacArthur Fellow,
http://video.mit.edu/watch/fiction-writer-junot-diaz-2012-macarthur-fellowmacarthur-foundation-12723/ (accessed February 6, 2015); MIT, CSAIL at SXSW: Computing the Future, http://video.mit.edu/watch/csail-at-sxsw-computing-the-future-27590/ (accessed February 6, 2015).

[27]    MIT News Office YouTube Channel - About,
https://www.youtube.com/user/MITNewsOffice/about (accessed February 6, 2015); MIT OpenCourseWare YouTube Channel – About, https://www.youtube.com/user/MIT (accessed February 6, 2015); MIT CSAIL YouTube Channel – About, https://www.youtube.com/user/MITCSAIL/about (accessed February 6, 2015); MITK12Videos YouTube Channel - About, https://www.youtube.com/user/MITK12Videos/about (accessed February 6, 2015).

[28]    MIT, President Obama at MIT (Jan. 31, 2012),
https://www.youtube.com/watch?v=rnIlVOAspb8 (accessed February 6, 2015).

that lack captioning entirely;[29] and other content that is inaccurately captioned, such as a clip about microthruster-propelled satellites that has over 45,000 views and a lecture on Lean Six Sigma Methods that has nearly 150,000 views.[30]

### D.   MIT on iTunes U

55.      MIT offers a variety of content on iTunes U, much of which is entirely uncaptioned, such as videos from a collection of 41 STEM Concept Videos "designed to help students learn a pivotal concept in science or engineering" such as entropy or torque, and a series of 12 videos instructing on how to launch a successful startup titled "New Enterprises."

### E.   MIT Museum

56.      The MIT Museum posts videos and audio tracks of lectures and talks, including videos of its lunchtime series Lunch with Laureates and Luminaries, which features MIT professors and students discussing their research;[31] videos of its Soap Box series, a series of

---

[29]      *See, e.g.*, MIT OCW, Mind vs. Brain: Confessions of a Defector (Mar. 4, 2014), https://www.youtube.com/watch?v=6Px0livk6m8 (accessed February 6, 2015); MIT OCW, Writing Workshop (Jan. 30, 2014), https://www.youtube.com/watch?v=G7p3lFMmDiQ (accessed February 6, 2015); MIT OCW, 1. Finance Growth, and Volatility (Mar. 6, 2014), https://www.youtube.com/watch?v=0hA7nbRzOy0 (accessed February 6, 2015); MIT OCW, 7. Capital Asset Pricing (Mar. 6, 2014), https://www.youtube.com/watch?v=h6Ok8CNVOaE (accessed February 6, 2015); MIT OCW, 5. Dynamic Optimality I (Dec. 18, 2013), https://www.youtube.com/watch?v=DZ7jt1F8KKw (accessed February 6, 2015); MIT OCW, 11. Integer Models (Dec. 18, 2013), https://www.youtube.com/watch?v=u-HHY1ylhHY (accessed February 6, 2015).

[30]      MIT, Microthrusters propel small satellites at MIT (Aug. 16, 2012), https://www.youtube.com/watch?v=BHVkc2JwAuI (accessed February 6, 2015); MIT OCW, Ses 1-2 | MIT 16.660 Introduction to Lean Six Sigma Methods, January (IAP) 2008 (July 6, 2009), https://www.youtube.com/watch?v=PQspf3q12mo (accessed February 6, 2015).

[31]      MIT Museum, Lunch with Laureates and Luminaries (Series Archive), http://web.mit.edu/museum/multimedia/luncharchive.html (accessed February 6, 2015). *See, e.g.*, MIT Museum, Lunch with a Luminary: Peter Diamond, http://web.mit.edu/museum/multimedia/csf11-lunch-diamond.html (accessed February 6, 2015) (uncaptioned video).

salon-style talks with MIT scientists;[32] and videos of other MIT Museum programs.[33] These include videos that are entirely uncaptioned as well as videos that are inaccurately and unintelligibly captioned.

### F.   MIT TechTV

57.     MIT states that "MIT Tech TV is the video-sharing site for the MIT community. It supports the community through the aggregation and distribution of science, engineering, technology, and a lot more MIT-related video on the web."[34]  "The ability to upload videos is limited to people with an *mit.edu* e-mail address (MIT students, faculty, staff, alumni, etc.), but anyone will be able to watch videos posted to MIT TechTV."[35]  "Content uploaded to MIT TechTV [is] moderated by a combination of individual MIT TechTV moderators and the members of the MIT TechTV website in accordance with the Terms of Use and Principles and Mission.  Content that does not adhere to this website's Terms of Use and/or Principles and Mission will be rejected or removed from the website."[36]

---

[32]     MIT Museum, Soap Box Archives, http://web.mit.edu/museum/programs/soapboxarchives.html (accessed February 6, 2015). *See, e.g.*,MIT Museum, Soap Box: How Does Stress Drive PTSD?, http://techtv.mit.edu/collections/mitmuseum/videos/27021-soap-box-how-does-stress-drive-ptsd (accessed February 6, 2015) (uncaptioned video).

[33]     *See, e.g.*, Life in the Universe (Series Archive), http://web.mit.edu/museum/multimedia/arewealone.html (accessed February 6, 2015); MIT Museum, Life in the Universe: Are We Alone?, http://techtv.mit.edu/videos/14977-life-in-the-universe-are-we-alone (accessed February 6, 2015) (uncaptioned video)

[34]     MIT Tech TV, About MIT Tech TV, http://techtv.mit.edu/about (accessed February 6, 2015).

[35]     MIT Tech TV, Terms of Use, http://techtv.mit.edu/terms-of-use/ (accessed February 6, 2015).

[36]     *Id.*

58.     MIT Tech TV includes videos that are entirely uncaptioned, including for example two talks on the "Life Cycle of Stars" selected to be video-recorded as part of an ongoing MIT Libraries and MIT Academic Media Production Services project,[37] and multiple videos from an annual workshop on "The Social Brain."[38]

### G.     edX / MITx

59.     Together with Harvard University in 2012, MIT founded the edX learning platform. "Through edX, the two institutions [have] collaborate[d] to enhance campus-based teaching and learning and build a global community of online learners."[39]

60.     MIT publishes its edX courses on an edX platform titled MITx. MIT states that "[t]hrough MITx, the Institute furthers its commitment to improving education worldwide."[40]

---

[37]     MIT Kavli Institute, Outreach Efforts, http://space.mit.edu/outreach/outreach-efforts (accessed February 6, 2015) (see "Outreach" tab); MIT, The Life Cycle of Stars – Session 1 (Jan. 31, 2013), http://techtv.mit.edu/videos/bdacfb08b2ef57d6585276973c06fccbab263a8c/private (accessed February 6, 2015); MIT, The Life Cycle of Stars – Session 2 (Jan. 31, 2013), http://techtv.mit.edu/videos/f67cae6198c9d360032600d9f7b3965828c4ffe5/private (accessed February 6, 2015).

[38]     *See, e.g.*, Simons Center for the Social Brain, Simons Center Annual Workshop 2014: Dr. Elizabeth Norton, MIT, http://techtv.mit.edu/videos/29727-simons-center-annual-workshop-2014-dr-elizabeth-norton-mit (accessed February 6, 2015); Simons Center for the Social Brain, Simons Center Annual Workshop 2014: Dr. Isaac S. Kohane, http://techtv.mit.edu/videos/29724-simons-center-workshop-2014-dr-isaac-s-kohane (accessed February 6, 2015); Simons Center for the Social Brain, Simons Center Annual Workshop 2014: Workshop Open Discussion, http://techtv.mit.edu/videos/29728-simons-center-annual-workshop-2014-workshop-open-discussion (accessed February 6, 2015).

[39]     MIT News, *MIT and Harvard announce edX* (May 2, 2012), http://newsoffice.mit.edu/2012/mit-harvard-edx-announcement-050212 (accessed February 6, 2015).

[40]     edX, About MITx, https://www.edx.org/school/mitx/allcourses (accessed February 6, 2015).

On MITx, MIT offers a variety of courses as well as "Xseries programs, related sequences of MITx courses within a specific domain."[41]

61.     MITx's offerings include general interest courses, such as computer programming courses for those with no experience, a course on entrepreneurship, and a course on architecture.

62.     All MITx courses are free to all, with options for auditing or earning a "certificate" after completing the course.  Some courses, including the MIT Xseries courses, have the additional option to pay a fee to earn a verified certificate of achievement.

63.     Upon information and belief, MITx includes courses that are uncaptioned or contain inaccurate captioning.

## II.      Harm to the Plaintiffs.

64.     NAD has standing to sue as an association on behalf of its members.  NAD members, including Mr. and Mrs. Nettles, would have standing to sue as individuals because they have been, and continue to be, harmed by Defendant's discriminatory actions, as set forth herein.  Moreover, as set forth above, advocating on behalf of its members on this issue is germane to the NAD's interests of ensuring that important tools of daily life, such as websites and online educational courses, are accessible to people who are deaf or hard of hearing.

65.     Because NAD seeks only declaratory and injunctive relief, individual participation by NAD members is not required.

66.     Plaintiff C. Wayne Dore, motivated both by his personal interests and in his role as a tester in this case, has attempted to use Defendant MIT's website(s).  Because of MIT's failure to provide accurate captioning, he was unable to understand, and thus denied the benefit of, many of the videos he tried to watch.

---

[41]     *Id.*

67.     Mr. Dore has tried to access the following platforms of Defendant MIT, but found uncaptioned or erroneously captioned content on each of them: MIT OCW, MIT Video, and MIT on iTunes U.

68.     In the future, Mr. Dore would like to, and intends to, attempt to access Defendant MIT's online content.

69.     Plaintiff Christy Smith, motivated both by her personal interests and in her role as a tester in this case, has attempted to use Defendant MIT's website(s).  Because of MIT's failure to provide accurate captioning, she was unable to understand, and thus denied the benefit of, many of the videos she tried to watch.

70.     Ms. Smith has tried to access the following platforms of Defendant MIT, but found uncaptioned or erroneously captioned content on each of them: MIT OpenCourseWare, MIT Video, MIT content on YouTube, MIT on ITunes U, MIT Museum's online content, and online content posted on MIT TechTV by faculty or staff on topics of general interest.

71.     In the future, Ms. Smith would like to, and intends to, attempt to access Defendant MIT's online content.

72.     Plaintiff Lee Nettles, motivated both by his personal interests and in his role as a tester in this case, has attempted to use Defendant MIT's website(s).  Because of MIT's failure to provide accurate captioning, he was unable to understand, and thus denied the benefit of, many of the videos he tried to watch.

73.     Mr. Nettles has tried to access the following platforms of Defendant MIT, but found uncaptioned or erroneously captioned content on each of them: MIT on YouTube and MIT on iTunes U.

74.     In the future, Mr. Nettles would like to, and intends to, attempt to access Defendant MIT's online content.

75.     Plaintiff Diane Nettles, motivated both by her personal interests and in her role as a tester in this case, has attempted to use Defendant MIT's website(s).  Because of MIT's failure to provide accurate captioning, she was unable to understand, and thus denied the benefit of, many of the videos she tried to watch.

76.     Ms. Nettles has tried to access the following platforms of Defendant MIT, but found uncaptioned or erroneously captioned content on each of them: MIT on YouTube and MIT on iTunes U.

77.     In the future, Ms. Nettles would like to, and intends to, attempt to access Defendant MIT's online content.

78.     All Plaintiffs have been, and in the absence of an injunction will continue to be, injured by MIT's failure to provide timely, accurate captioning of its publicly available online content.

## III.    Prior Notice to MIT

79.     MIT has long known that captioning is necessary to make its online content accessible to deaf and hard of hearing persons, and that it was legally responsible to provide such captioning.

80.     For example, in 2010, MIT, through its News Office, recognized that "[c]losed captions make videos accessible to those who are deaf or hard of hearing . . . ."[42]

---

[42]     Robyn Fizz, *With Move to Kaltura, MIT TechTV now supports closed captions*, MIT News (Dec. 2, 2010), http://newsoffice.mit.edu/2010/techtv-captions (accessed February 6, 2015).

81.     That same year, the United States Department of Education Office of Civil Rights and the United States Department of Justice Civil Rights Division issued a joint "Dear Colleague Letter" ("DCL") to university colleges and presidents, making clear that "the general requirements of Section 504 and the ADA reach equipment and technological devices when they are used by . . . places of public accommodation as part of their programs, services, activities, goods, advantages, privileges, or accommodations."[43] (The Department of Education and the Department of Justice are the two federal agencies with Section 504 and ADA enforcement responsibilities.)

82.     In 2011, the Department of Education issued a "FAQ" document discussing the DCL, and explaining that it reflected "long-standing law," "key principles of Federal disability discrimination law," and "long-standing requirements."[44]

83.     The Department of Education also made clear that the DCL applies to all forms of emerging technology and that "all school programs or activities—whether in a 'brick and mortar [classroom],' online, or other 'virtual' context—must be operated in a manner that complies with Federal disability discrimination laws."[45]

84.     MIT's current website emphasizes how crucial captioning is to allow deaf and hard of hearing persons access to online content: "Users with hearing impairments can use the web if provided ***captions*** for multimedia content (any video content that also has audio) and

---

[43]     U.S. Dep't of Justice & U.S. Dep't of Educ., Dear Colleague Letter (June 29, 2010), https://www2.ed.gov/about/offices/list/ocr/letters/colleague-20100629.html.

[44]     U.S. Dep't of Educ., Frequently Asked Questions About the June 29, 2010, Dear Colleague Letter, at 1 (May 26, 2011), http://www2.ed.gov/about/offices/list/ocr/docs/dcl-ebook-faq-201105.pdf.

[45]     *Id.* at 4.

*transcripts* for audio-only content.   Without captions or transcripts, only the visual content is accessible."[46]

85.     Beginning in March 2014, the NAD repeatedly approached MIT to request that MIT ensure that its online content has timely, accurate captioning.

86.     Despite MIT's knowledge that captioning is crucial to provide deaf and hard of hearing persons access to its online content, and despite its knowledge that regulatory agencies believe that captioning is required by law, and despite NAD's request on behalf of its members that MIT make its online content accessible, only a fraction of MIT's online content has accurate captioning.

## CLASS ACTION ALLEGATIONS

87.     Plaintiffs Dore, Smith, Lee Nettles, and Diane Nettles (the "Representative Plaintiffs") bring this action on behalf of themselves and on behalf of a class defined as follows: individuals who are deaf or hard of hearing who have been, or in the future will be, denied the full and equal enjoyment of online content for the general public produced or created by MIT, and/or made available to the general public by MIT on MIT Platforms, because that content is not accurately captioned.

88.     Joinder of all members of the proposed class would be impracticable because, without limitation, the class consists of numerous individuals who are geographically diverse, these individuals are very difficult to identify, and they are unlikely to be able to bring individual suits.

89.     There are numerous common questions of law and fact, including but not limited to:

---

[46]     MIT, Web Accessibility Guidelines, http://ux.mit.edu/accessibility/guidelines (accessed February 6, 2015) (emphasis in original).

a.     Whether provision of online content constitutes a service, facility, privilege or advantage of MIT;

b.     Whether provision of online content constitutes a program or activity of MIT;

c.     Whether Section 504 and/or Title III require MIT to caption its online content so that deaf and hard of hearing individuals are not denied the benefits of its services, facilities, privileges, advantages, programs and/or activities;

d.     Whether Section 504 and/or Title III require MIT to caption its online content so that deaf and hard of hearing individuals are not provided with benefits that are unequal to those provided to nondisabled persons;

e.     Whether captioning constitutes an auxiliary aid or service under Section 504 and/or Title III;

f.     Whether Section 504 and/or Title III require MIT to caption its online content to ensure that deaf and hard of hearing individuals are provided with effective communication;

g.     Whether MIT has policies or practices that result in uncaptioned or inaccurately captioned online content;

h.     Whether MIT fails to have in place policies or practices to ensure that online content is accurately captioned;

i.     Whether MIT has failed to make reasonable modifications in policies, procedures, and practices that are necessary to provide persons with hearing disabilities meaningful, effective access to its online content.

90.     The claims of the Representative Plaintiffs are typical of the claims of the class because they arise from the same course of conduct engaged in by Defendant MIT, are based on the same alleged violations of the same statutes and regulations, and seek the same relief.

91.     The Representative Plaintiffs will fairly and adequately represent the interests of the class.  The Representative Plaintiffs have no interests adverse to the interests of other members of the class.  Further, the attorneys they have retained include counsel who have been appointed as class counsel in, and have successfully litigated, numerous disability rights class actions across the country.

92.     Finally, certification under Rule 23(b)(2) is proper here because Defendant MIT has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive or declaratory relief with respect to the class as a whole.

## FIRST CLAIM FOR RELIEF
**Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq*.**

93.     Plaintiffs incorporate by reference each and every allegation herein.

94.     Section 504 of the Rehabilitation Act of 1973 provides in pertinent part: "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ."  29 U.S.C. § 794(a).

95.     Defendant MIT is a recipient of federal financial assistance sufficient to invoke the coverage of Section 504, and has received such federal financial assistance at all times relevant to the claims asserted in this Complaint.

96.     The Rehabilitation Act defines "program or activity" to "mean[] all of the operations of . . . a college, university, or other postsecondary institution."  29 U.S.C. § 794(b)(2)(A); 34 C.F.R. § 104.3(k).  Defendant MIT is a "college, university, or other

postsecondary institution." 29 U.S.C. § 794(b)(2)(A); 34 C.F.R. § 104.3(k). Defendant MIT's publicly available online content is therefore a "program or activity" of Defendant MIT within the meaning of the Rehabilitation Act.

97.    Defendant MIT has engaged in illegal disability discrimination, as defined by the Rehabilitation Act, including without limitation:

• directly or through contractual, licensing or other arrangements, denying opportunities for deaf and hard of hearing people to participate in or benefit from its aids, benefits, or services;

• directly or through contractual, licensing or other arrangements, affording deaf and hard of hearing people opportunities to participate or benefit from its aids, benefits and service that are not equal to, or effective as, those afforded others;

• directly or through contractual, licensing or other arrangements, limiting deaf or hard of hearing people in the enjoyment of rights, privileges, advantages, and/or opportunities enjoyed by others receiving Defendant's aids, benefits, or services;

• utilizing methods of administration (i) that have the effect of subjecting deaf or hard of hearing people to discrimination on the basis of handicap, and (ii) that have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of Defendant's programs and activities with respect to deaf and hard of hearing people;

• failing to provide an auxiliary aid or service where necessary to ensure that deaf or hard of hearing people are not denied effective communication and are not excluded, denied services or otherwise treated differently than others; and/or

•     failing to make reasonable modifications in policies, practices or procedures where necessary to afford its services, privileges, advantages or accommodations to deaf or hard of hearing persons.

98.     Defendant MIT has violated the Rehabilitation Act by, without limitation, failing to provide accurate captioning for its online content, thereby denying deaf and hard of hearing persons the benefits of that online content, providing them with a benefit that is not equal to that provided others, and denying them effective communication.

99.     Defendant MIT has further violated the Rehabilitation Act by, without limitation, utilizing administrative methods, practices and policies that allow its online content to be made available without accurate captioning.

100.     Defendant MIT's ongoing and continuing violations of Section 504 have caused, and in the absence of an injunction will continue to cause, harm to the plaintiffs and the class.

**SECOND CLAIM FOR RELIEF**
**Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12181 *et seq.***

101.     Plaintiffs incorporate by reference each and every allegation herein.

102.     Title III requires that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns . . . or operates a place of public accommodation." 42 U.S.C. § 12182(a); 28 C.F.R. § 36.201(a).

103.     Defendant MIT operates an "undergraduate, or postgraduate private school, or other place of education," which is a place of public accommodation pursuant to 42 U.S.C. § 12181(7)(J).

104.     Defendant MIT has engaged in illegal disability discrimination, as defined by Title III, including without limitation:

- directly, or through contractual, licensing, or other arrangements denying opportunities for deaf and hard of hearing people to participate in and benefit from its aids, benefits, and services;

- directly, or through contractual, licensing, or other arrangements affording deaf and hard of hearing people opportunities to participate in and benefit from its aids, benefits, and services that are not equal to, or effective as, that afforded others;

- utilizing methods of administration (i) that have the effect of discriminating on the basis of disability; or (ii) that perpetuate the discrimination of others who are subject to common administrative control;

- failing to provide auxiliary aids and services where necessary to ensure that deaf or hard of hearing people are not denied effective communication and are not excluded, denied services or otherwise treated differently than others; and/or

- failing to make reasonable modifications in policies, practices or procedures where necessary to afford its services, privileges, advantages or accommodations to deaf or hard of hearing people.

105.    Defendant MIT has violated Title III by, without limitation, failing to provide accurate captioning for its online content, thereby denying deaf and hard of hearing persons the benefits of that online content, providing them with a benefit that is not equal to that provided others, and denying them effective communication.

106.    Defendant MIT has further violated Title III by, without limitation, utilizing administrative methods, practices and policies that allow its online content to be made available without accurate captioning.

107.     Defendant MIT's ongoing and continuing violations of Title III have caused, and in the absence of an injunction will continue to cause, harm to the plaintiffs and the class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request judgment as follows:

1.     A declaration that Defendant MIT's conduct as alleged here has violated, and continues to violate, Section 504 of the Rehabilitation Act of 1973, Title III of the Americans with Disabilities Act of 1990, and the regulations promulgated under those statutes;

2.     Issuance of a permanent injunction requiring Defendant MIT to provide timely, effective communication through comprehensive and accurate captioning of the online content that it creates and/or produces, as well as the online content that it makes available on MIT Platforms, and to ensure that such violations do not occur in the future, as well as providing for appropriate interim injunctive relief;

3.     Award of Plaintiffs' reasonable attorneys' fees and costs, as provided by law; and

4.     Such other relief as the Court finds just and proper.


Respectfully Submitted,

NATIONAL ASSOCIATION OF THE DEAF, C. WAYNE DORE, CHRISTY SMITH, LEE NETTLES, and DIANE NETTLES

By their Attorneys,


/s/ Thomas P. Murphy
Thomas P. Murphy, Esq., Board of Bar Overseers no. 630527
DISABILITY LAW CENTER, INC.
32 Industrial Drive East
Northampton, Massachusetts, 01060

(413) 584-6337 / (800) 222-5619 Voice
tmurphy@dlc-ma.org

Christine M. Griffin, Esq., Board of Bar Overseers no. 564420
Stanley J. Eichner, Esq., Board of Bar Overseers no. 543139
Richard M. Glassman, Esq., Board of Bar Overseers no. 544381
DISABILITY LAW CENTER, INC.
11 Beacon Street, Suite 925
Boston, MA 02108
(617) 723-8455 / (800) 872-9992 Voice
cgriffin@dlc-ma.org
seichner@dlc-ma.org
rglassman@dlc-ma.org

Timothy P. Fox*
Sarah M. Morris*
CIVIL RIGHTS EDUCATION AND ENFORCEMENT CENTER
104 Broadway, Suite 400
Denver, CO 80203
Telephone: (303) 757-7901
tfox@creeclaw.org
smorris@creeclaw.org

Bill Lann Lee*
Julie Wilensky*
LEWIS, FEINBERG, LEE, RENAKER & JACKSON, P.C.
476 9th Street
Oakland, CA 94607-4048
Telephone: (510) 839-6824
blee@lewisfeinberg.com
jwilensky@lewisfeinberg.com

Arlene B. Mayerson, Esq.*
Namita Gupta, Esq.*
DISABILITY RIGHTS EDUCATION AND DEFENSE FUND
3075 Adeline Street, Suite 210
Berkeley, CA 94703
Telephone: (510) 644-2555
amayerson@dredf.org
ngupta@dredf.org

Caroline E. Jackson, Esq.*
Marc P. Charmatz, Esq.*
THE NATIONAL ASSOCIATION OF THE DEAF
LAW AND ADVOCACY CENTER

8630 Fenton Street, Suite 820
Silver Spring, MD 20910
Telephone: (301) 587-1788
TTY: (301) 587-1789
caroline.jackson@nad.org
marc.charmatz@nad.org

*Attorneys for Plaintiffs and Proposed Plaintiff Class*

Dated: February 12, 2015


\* Application for admission *pro hac vice* forthcoming