**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| NATIONAL ASSOCIATION OF THE DEAF, on behalf of itself, C. WAYNE DORE, CHRISTY SMITH, LEE NETTLES, and DIANE NETTLES, on behalf of themselves and a proposed class of similarly situated persons defined below, | Civil Action No. 3:15-CV-30024-MGM |
| Plaintiffs, | **LEAVE TO FILE GRANTED ON JULY 20, 2015** |
| v. | |
| MASSACHUSETTS INSTITUTE OF TECHNOLOGY, | |
| Defendant. | |

## REPLY MEMORANDUM IN SUPPORT OF MOTION TO STAY OR DISMISS

TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

I.      THIS COURT SHOULD STAY OR DISMISS SO THAT DOJ CAN PROMULGATE
        WEBSITE ACCESSIBILITY REGULATIONS. ............................................................... 2

        A.      NAD's Section 504 Claims Are Subject To Stay Or Dismissal. .......................... 3

        B.      MIT Moved To Stay Or Dismiss Pursuant To Rule 12(b)(1). ............................... 3

        C.      Courts Invoke Primary Jurisdiction In Rulemaking Cases Like This One. ............. 5

        D.      DOJ Has Not "Authoritatively Interpreted" Title III As Mandating The Relief
                NAD Seeks In This Case. ...................................................................................... 5

        E.      The ANPRM Confirms That Formulation Of Any Website Accessibility
                Regulation Will Turn On Considerably More Than "Statutory Interpretation." .... 7

        F.      Application of Primary Jurisdiction Would Not Prejudice NAD. ......................... 8

II.     THE COMPLAINT FAILS TO STATE A CLAIM FOR VIOLATION OF SECTION
        504 ................................................................................................................................. 10

        A.      Section 504 Does Not Recognize The Type Of "Boundless Disparate Impact"
                Theory NAD Espouses. ........................................................................................ 10

        B.      ED's Regulations Do Not Support NAD's "Caption Or Remove" Theory Of
                Liability ............................................................................................................... 11

        C.      ED's "Dear Colleague Letter" And FAQs Do Not Support NAD's "Caption Or
                Remove" Theory Of Liability. .............................................................................. 13

        D.      ED Settlements Do Not Support NAD's "Caption Or Remove" Theory Of
                Liability ............................................................................................................... 14

III.    THE COMPLAINT FAILS TO STATE A CLAIM UNDER TITLE III. ........................ 15

        A.      NAD's "Caption Or Remove" Theory Of Liability Cannot Be Grounded In Title
                III's Auxiliary Aids Standard ............................................................................... 16

        B.      NAD's "Caption Or Remove" Theory Of Liability Is Barred By The Accessible
                Goods Exception. ................................................................................................. 18

CONCLUSION ................................................................................................................... 20

TABLE OF AUTHORITIES

## Cases

*Access Now, Inc. v. Southwest Airlines, Co.*,
   227 F. Supp. 2d 1312 (S.D. Fla. 2002) .............................................................. 7

*Alexander v. Choate*,
   469 U.S. 287 (1985).................................................................................. 14, 16

*Argenyi v. Creighton Univ.*,
   703 F.3d 441 (8th Cir. 2013) ....................................................................... 16

*Ariz. ex rel. Goddard v. Harkins Amusement Enters., Inc.*,
   603 F.3d 666 (9th Cir. 2010) ....................................................................... 26

*Arizona ex rel. Goddard v. Harkins Administrative Services, Inc.*,
   2011 U.S. Dist. LEXIS 127682 (D. Ariz. 2011)................................................ 6

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)................................................................................... 21

*Ass'n of Int'l Auto. Mfrs., Inc. v. Comm'r, Mass. Dep't of Envt'l Protection*,
   196 F.3d 302 (1st Cir. 1999)........................................................................ 11

*Ass'n of Irritated Residents v. Fred Schakel Dairy*,
   634 F. Supp. 2d 1081 (E.D. Cal. 2008).......................................................... 6

*Ass'n of Irritated Residents v. Fred Schakel Dairy*,
   634 F. Supp. 2d 1081(E.D. Cal. 2008)........................................................ 3, 6

*Barrera v. Comcast Holdings Corp.*,
   2014 U.S. Dist. LEXIS 65800 (N.D. Cal. 2014) ............................................ 12

*Bd. of Educ. v. Rowley*,
   458 U.S. 176 (1982).................................................................................. 17

*Bercovitch v. Baldwin Sch., Inc.*,
   133 F.3d 141 (1st Cir. 1998)......................................................................... 3

*Bowen v. Georgetown Univ. Hosp.*,
   488 U.S. 204 (1988)................................................................................... 9

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Counc.*,
   467 U.S. 837 (1984)................................................................................... 5

*Christensen v. Harris Cty.*, 529 U.S. 576 (2000)......................................................... 8

*Christopher v. SmithKline Beecham Corp.*,
    132 S. Ct. 2156 (2012) ............................................................................ 9

*Conn. Light and Power v. Nuclear Regulatory Comm'n*,
    673 F.2d 525, 530 (D.C. Cir. 1982) ........................................................ 5

*Cornilles v. Regal Cinemas, Inc.*,
    2002 U.S. Dist. LEXIS 7025 (D. Or. 2002).............................................. 26

*Cty. of Santa Clara v. Astra U.S.*,
    588 F.3d 1237 (9th Cir. 2009) ............................................................. 4, 6

*Cullen v. Netflix, Inc.*,
    2015 U.S. App. LEXIS 5257 (9th Cir. 2015) ......................................... 7

*Disabled in Action of Pa. v. Sykes*,
    833 F.2d 1113 (3d Cir. 1987).................................................................. 15

*DMP v. Fay School*,
    933 F. Supp. 2d 214 (D. Mass. 2013) .................................................... 22

*Dobard v. S.F. Bay Area Rapid Transit Dist.*,
    1993 U.S. Dist. LEXIS 13677 (N.D. Cal. 1993) ................................... 24

*Doe v. Mutual of Omaha Ins. Co.*,
    179 F.3d 557 (7th Cir. 1999) ........................................................... 13, 27

*Dudley v. Hannaford Bros. Co.*,
    333 F.3d 299 (1st Cir. 2003)....................................................... 22, 23, 26

*Envtl. Def. Fund v. EPA*,
    852 F.2d 1316 (D.C. Cir. 1988) ............................................................ 6

*Enyart v. Nat'l Conf. of Bar Exam'rs, Inc.*,
    630 F.3d 1153 (9th Cir. 2011) .............................................................. 23

*Falls v. Prince George's Hosp. Ctr.*,
    1999 U.S. Dist. LEXIS 22551 (D. Md. 1999) ..................................... 18

*Ford v. Schering-Plough Corp.*,
    145 F.3d 601 (3d Cir. 1998)................................................................... 7

*Fortyune v. City of Lomita*,
    766 F.3d 1098 (9th Cir. 2014) ............................................................ 15

*Fulton v. Goord*,
    591 F.3d 37 (2d Cir. 2009)............................................................... 17, 19

*Gascho v. Global Fitness Holdings, LLC*,
    863 F. Supp. 2d 677 (S.D. Ohio 2012) ............................................................................. 8

*George v. Bay Area Rapid Transit*,
    577 F.3d 1005 (9th Cir. 2009) ........................................................................................ 15

*Goldstein v. Harvard Univ.*,
    77 Fed. Appx. 534 (1st Cir. 2003) ................................................................................. 22

*Goodspeed Airport, LLC v. East Haddam Inland Wetlands & Watercourses Comm'n*,
    681 F. Supp. 2d 182 (D. Conn. 2010) .............................................................................. 8

*Greater L.A. Agency on Deafness, Inc. v CNN, Inc.*,
    742 F. 3d 414 (9th Cir. 2014) ....................................................................................... 14

*Greater Los Angeles Council on Deafness, Inc. v. Community Television of S. Cal.*,
    719 F.2d 1017 (9th Cir. 1983) ...................................................................................... 15

*Heinrichs v. Wells Fargo Bank, N.A.*,
    2014 U.S. Dist. LEXIS 72713 (N.D. Cal. 2014) .............................................................. 3

*High Country Home Health, Inc. v. Thompson*,
    359 F.3d 1307 (10th Cir. 2004) ...................................................................................... 8

*Illinois-Masonic Med. Ctr. v. Sebelius*,
    859 F. Supp. 2d 137 (D.D.C. 2012) ................................................................................ 8

*In re Colgate-Palmolive Softsoap Antibacterial Hand Soap Mktg. & Sales Practices Litig.*,
    2013 U.S. Dist. LEXIS 37152 (D.N.H. 2013) ................................................................. 6

*Indep. Living Res. v. Or. Arena Corp.*,
    982 F. Supp. 698 (D. Or. 1997) ................................................................................... 21

*Jancik v. Redbox Automated Retail, LLC*,
    2014 U.S. Dist. LEXIS 67223 (C.D. Cal. 2014)....................................................... 25, 27

*Jones v. Nat'l Conf. of Bar Exam'rs*,
    2011 U.S. Dist. LEXIS 85137 (D. Vt. 2011) ................................................................. 24

*Kappelmann v. Delta Air Lines, Inc.*,
    539 F.2d 165 (D.C. Cir. 1976) ....................................................................................... 6

*Karczewski v. K Motors, Inc.*,
    2015 U.S. Dist. LEXIS 45226 (S.D. Cal. 2015) ............................................................ 27

*Katz v. City Metal Co.*,
    87 F.3d 26 (1st Cir. 1996) .............................................................................................. 4

*Kelley ex rel. Michigan Dep't of Nat. Res. v. F.E.R.C.*,
    96 F.3d 1482 (D.C. Cir. 1996) ...................................................... 8

*Locust Cartage Co. v. Transam. Freight Lines, Inc.*,
    430 F.2d 334 (1st Cir. 1970) ...................................................... 12

*Loye v. Cty. of Dakota*,
    625 F.3d 494 (8th Cir. 2010) ...................................................... 24

*M.R. v. Dreyfus*,
    697 F.3d 706 (9th Cir. 2011) ...................................................... 8

*Marlon v. W. New Eng. College*,
    2003 U.S. Dist. LEXIS 22095 (D. Mass. 2003) ............................... 4

*Massachusetts v. E\*Trade Access, Inc.*,
    2005 U.S. Dist. LEXIS 22621 (D. Mass. 2005) ............................... 21

*Merrimon v. UNUM Life Ins. Co. of Am.*,
    758 F.3d 46 (1st Cir. 2014) ...................................................... 8

*Michigan v. EPA*,
    __ S. Ct. __, 2015 U.S. LEXIS 4256 (2015) ................................. 10

*Nat'l Ass'n of the Deaf v. Netflix, Inc*.,
    2011 U.S. Dist. LEXIS 130443 (D. Mass. 2011) ...................... 4, 6, 7

*Nat'l Fed'n of the Blind v. Scribd Inc*.,
    2015 U.S. Dist. LEXIS 34213 (D. Vt. 2015) ................................. 7

*Noll v. Int'l Bus. Mach. Corp.*,
    2015 U.S. App. LEXIS 8375 (2d Cir. 2015) ................................. 23

*Parker v. Metropolitan Life Ins. Co.*,
    121 F.3d 1006 (6th Cir. 1998) (en banc) ........................................ 7

*Pejepscot Indus. Park v. Me. Cent. R.R. Co*.,
    215 F.3d 195 (1st Cir. 2000) ...................................................... 4

*Petrano v. Nationwide Mut. Fire Ins. Co.*,
    2013 U.S. Dist. LEXIS 45609 (N.D. Fla. 2013) ............................. 24

*PGA Tour, Inc. v. Martin*,
    532 U.S. 661 (2001) ...................................................... 23, 25, 26

*R.I. Handicapped Action Comm. v. R.I. Public Transit Auth.*,
    718 F.2d 490 (1st Cir. 1983) ...................................................... 14

*Rothschild v. Grottenthaler*,
  907 F.2d 286 (2d Cir. 1990).................................................................. 17, 19

*Rymes Heating Oils, Inc. v. Springfield Terminal Ry. Co.*,
  358 F.3d 82 (1st Cir. 2004).................................................................. 4, 12

*Schutza v. Courtesy Chevrolet Ctr.*,
  2015 U.S. Dist. LEXIS 49716 (S.D. Cal. 2015) ...................................... 22, 27

*Southeastern Cmty. College v. Davis*,
  442 U.S. 397 (1979)................................................................................ 13

*Starego v. N.J. State Interscholastic Ath. Ass'n*,
  970 F. Supp. 2d 303 (D.N.J. 2013) ........................................................... 23

*Todd v. Am. Multi-Cinema, Inc.*,
  222 F.R.D. 118 (S.D. Tex. 2003) .............................................................. 26

*Tucker v. Tennessee*,
  539 F.3d 526 (6th Cir. 2008) ................................................................... 14

*U.S. v. 43.47 Acres of Land*,
  2000 WL 306855 (D. Conn. 2000) ............................................................ 12

*U.S. v. Hoyts Cinemas Corp.*,
  380 F.3d 558 (1st Cir. 2004)....................................................................... 5

*United States v. Nat'l Amusements*,
  180 F. Supp. 2d 251 (D. Mass. 2001) ....................................................... 21

*Weyer v. Twentieth Century Fox Film Corp.*,
  198 F.3d 1104 (9th Cir. 2000) ................................................................. 26

*Wynne v. Tufts Univ. Sch. of Med.*,
  932 F.2d 19 (1st Cir. 1991) (en banc) .............................................. 14, 16, 19

*Wynne v. Tufts Univ. Sch. of Med.*,
  976 F.2d 791 (1st Cir. 1992) ................................................................... 16

## Statutes

29 U.S.C. § 794............................................................................... passim

42 U.S.C. § 12182(b)(2)(A)(iii)................................................................. 10

42 U.S.C. §§ 12818 et seq.................................................................. passim

## Other Authorities

DOJ, Advance Notice of Proposed Rulemaking, Accessibility of Web Information Services of State and Local Governments and Public Accommodations, 75 Fed. Reg. 43460 (July 26, 2010) .................................................................................................................... passim

DOJ, Section by Section Analysis of Title II Final Rule,
56 Fed. Reg. 35694 (July 26, 1991)............................................................... 12

DOJ, Section by Section Analysis of Title III Final Rule,
56 Fed. Reg. 35544 (July 26, 1991)............................................................... 18

HEW, Section-by-Section Analysis of Final Section 504 Rule,
42 Fed. Reg. 22672 (June 3, 1977) ............................................................... 12

https://www.edx.org/course/paradox-infinity-mitx-24-118x......................................... 9

June 29, 2010 "Dear Colleague Letter,"
https://www2.ed.gov/about/offices/list/ocr/letters/colleague-20100629.html............ 13, 14

May 26, 2011 Frequently Asked Questions About the June 29, 2010,
Dear Colleague Letter, http://www2.ed.gov/about/offices/list/ocr/
docs/dcl-ebook-faq-201105.pdf ..................................................................... 13

September 9, 1996 Letter to Senator Tom Harkin,
http://www.justice.gov/crt/foia/readingroom/frequent_requests/ada_tal/tal712.txt ........... 6

South Carolina Virtual Charter School Agreement,
http://www2.ed.gov/documents/press-releases/south-carolina-charter-school-
agreement.doc .............................................................................................. 15

United States District Courts – National Judicial Caseload Profile,
http://www.uscourts.gov/
statistics/table/na/federal-court-management-statistics/2015/03/31-2.............................. 8

Univ. of Cincinnati Resolution Agreement,
http://www2.ed.gov/documents/press-releases/university-cincinnati-agreement.pdf ...... 15

University of Montana Agreement,
http://www.umt.edu/accessibility/docs/FinalResolutionAgreement................................. 15

Youngstown State University Agreement,
http://www2.ed.gov/documents/press-releases/
youngstown-state-university-agreement.pdf.................................................................. 15

**Regulations**

28 C.F.R. § 36.104 ........................................................................................................... 4

28 C.F.R. § 36.303(a) ...................................................................................................... 8

28 C.F.R. § 36.307(a) .................................................................................................... 19

34 C.F.R. § 104.4 .......................................................................................................... 11

34 C.F.R. § 104.44(d)(1) ............................................................................................... 12

34 C.F.R. §§ 104.21 - 104.23 ........................................................................................ 11

34 C.F.R. §§ 104.41 - 104.47 ........................................................................................ 11

## INTRODUCTION

NAD claims that federal law requires MIT, a non-profit educational institution that disseminates information online free of charge, to caption *all* videos on *all* MIT websites and *all* third party platforms, without regard to a video's source, purpose, context, location, audience or level of demand.  Put differently, NAD claims that MIT cannot lawfully communicate any idea to the public via recorded spoken word, without first undertaking to caption it.  NAD makes its sweeping demand even though it and the United States acknowledge that Section 504 and Title III do not contain such a requirement.  Indeed, DOJ's ANPRM confirms that amendment of its Title III regulations is necessary precisely because current law *does not* prescribe a particular form of Internet accessibility:

> a clear requirement that provides the disability community consistent access to Web sites and covered entities clear guidance on what is required under the ADA *does not exist.*

ANPRM, 75 Fed. Reg. 43460, 43464 (July 26, 2010) (emphasis added).  Of course, there would be no need to amend DOJ's regulations or to provide "further guidance" if those regulations already required the across-the-board captioning NAD seeks.

Despite the acknowledged absence of a statutory or regulatory mandate, NAD continues to defend its contention that MIT violates Section 504 and Title III by failing to caption all online video content on all "MIT Platforms."  (Compl. ¶¶ 2, 7–9, 41, 63, 66–78, 87, 89; Prayer ¶¶ 1, 2.)  But MIT certainly cannot be held liable for violating a theoretical, incredibly broad and sweeping "caption or remove" rule that Congress has not enacted, and that DOJ has not adopted through rulemaking or otherwise.  Indeed, the regulatory and policy issues DOJ considers in its ANPRM strongly suggest DOJ will not adopt a rule that even remotely approximates NAD's blunderbuss "caption or remove" theory of liability:

- A "caption or remove" standard without any type of "safe harbor" for existing content could constrain an educational institution's ability to convey information and ideas,

1

raising First Amendment and other implications warranting careful consideration. *See* ANPRM, 75 Fed. Reg. at 43466–67.

- Requiring captioning for all website videos fails to account for a video's source, purpose, context, audience for, location or level of demand, including videos created for personal, non-commercial uses, and videos and third party websites over which a public accommodation has no control. *Id.* at 43465.

- An across-the-board captioning requirement fails to consider whether public policy is best served by adopting performance-based, rather than technical, standards. *Id.*

- A one-size-fits-all "caption or remove" standard erroneously assumes that captioning is the only possible method to make online content accessible, despite the ANPRM's acknowledgment that other alternatives to online accessibility exist and are permitted. *Id.* at 43466.

NAD and the United States do not speak to these issues, choosing instead to argue that: Section 504 and Title III "apply to the Internet" (a proposition that, while unsettled, is assumed by our motion); both laws generally require "auxiliary aids" (a remedy not dispensed in bulk); and it is a "question of fact" whether NAD can establish its prima facie case (MIT is challenging the legal theory upon which NAD's Complaint is predicated).  Given the complexities here, the Court should at a minimum stay or dismiss this action without prejudice pursuant to the primary jurisdiction doctrine, so that DOJ can complete the rulemaking process required by the APA and due process.  Alternatively, this Court should dismiss NAD's Complaint with prejudice, precisely because current law simply does not mandate NAD's one-size-fits-all, "caption or remove" solution to accessibility.

## I.     THIS COURT SHOULD STAY OR DISMISS SO THAT DOJ CAN PROMULGATE WEBSITE ACCESSIBILITY REGULATIONS.

DOJ soon will issue proposed regulations establishing technical standards for website and online video accessibility.  ANPRM, 75 Fed. Reg. 43460.  When MIT's motion was filed, the expected release date was in the summer of 2015, but DOJ recently announced that its proposed rules will be issued in the first quarter of 2016.  (SOI at 5 n.4.)  Given the significance of this case

and the nature of the law in this area, it continues to be appropriate for this Court to stay or dismiss this action under the primary jurisdiction doctrine to await a while longer for DOJ's regulations.

### A.      NAD's Section 504 Claims Are Subject To Stay Or Dismissal.

NAD's first argument, that the primary jurisdiction doctrine does not provide a basis for staying NAD's Section 504 claim, which is not the subject of DOJ's Title III ANPRM, is quickly dispatched for several reasons.

1.      Federal courts regularly stay litigation even where ongoing rulemaking will address some, but not all, of the claims at issue.  *See, e.g., Ass'n of Irritated Residents v. Fred Schakel Dairy*, 634 F. Supp. 2d 1081, 1096 (E.D. Cal. 2008); *see also Heinrichs v. Wells Fargo Bank, N.A.*, 2014 U.S. Dist. LEXIS 72713, *4–5 (N.D. Cal. 2014).

2.      There is no basis to distinguish Section 504 and Title III for purposes of primary jurisdiction.  Federal courts routinely "treat the ADA and the Rehabilitation Act as imposing parallel requirements" that are "interpreted substantially identically."  *Bercovitch v. Baldwin Sch., Inc.*, 133 F.3d 141, 151 n.13 (1st Cir. 1998) (quoting *Katz v. City Metal Co.*, 87 F.3d 26, 31 n.4 (1st Cir. 1996)); *Marlon v. W. New Eng. College*, 2003 U.S. Dist. LEXIS 22095, at *14–17 (D. Mass. 2003) ("[T]he standards and definitions of the ADA and the Rehabilitation Act are, for present purposes, identical").  This matter should be stayed or dismissed because DOJ's pending regulations will directly bear on NAD's Section 504 *and* Title III claims.

### B.      MIT Moved To Stay Or Dismiss Pursuant To Rule 12(b)(1).

NAD next suggests by citation to *Cty. of Santa Clara v. Astra U.S.*, 588 F.3d 1237, 1252 (9th Cir. 2009), that primary jurisdiction is not available because, under Federal Rule of Civil Procedure 12(b)(6), NAD's complaint plausibly asserts a claim that does not implicate the doctrine.  (Opp. at 7, 9.)  This argument also falters for several reasons.

1.      MIT filed its primary jurisdiction motion under Rule 12(b)(1), as is customary in the First Circuit. *Pejepscot Indus. Park v. Me. Cent. R.R. Co*., 215 F.3d 195, 198 (1st Cir. 2000); *Nat'l Ass'n of the Deaf v. Netflix, Inc*., 2011 U.S. Dist. LEXIS 130443 (D. Mass. 2011).

2.      The First Circuit has not shoehorned primary jurisdiction into Rule 12(b)(6) because there is "no fixed formula" for its application. *Pejepscot*, 215 F.3d at 205; *see also Rymes Heating Oils, Inc. v. Springfield Terminal Ry. Co.*, 358 F.3d 82, 85-86, 90-91 (1st Cir. 2004).

3.      Even if Rule 12(b)(6)'s plausibility standard applied, a stay or dismissal without prejudice is required.  The ANPRM began the process of developing standards for website accessibility rules.  Using its authority pursuant to 42 U.S.C. § 12186(b), DOJ will, through a formal rulemaking process, promulgate standards like the Americans with Disabilities Act Accessibility Guidelines ("ADAAGs"), which contain detailed scoping and technical requirements for accessible facility design, as well as exceptions and exemptions to those requirements.  *See* 28 C.F.R. §§ 36.104, 36.406.  The importance of this process for the online community generally and colleges and universities in particular cannot be underestimated. Formal rulemaking allows "interested members of the public to communicate information, concerns, and criticisms" like those articulated in these proceedings, *Conn. Light and Power v. Nuclear Regulatory Comm'n*, 673 F.2d 525, 530 (D.C. Cir. 1982), and will bring greater clarity to a very unsettled area of law.  *See generally Chevron, U.S.A., Inc. v. Nat. Res. Def. Counc.*, 467 U.S. 837, 842-45 (1984); *U.S. v. Hoyts Cinemas Corp*., 380 F.3d 558, 569 (1st Cir. 2004) (where DOJ's interpretation of Title III had "the practical effect of altering [its] regulation, a formal amendment—almost certainly prospective and after notice and comment—is the proper course").

4.      The website accessibility rules DOJ promulgates through formal rulemaking

clearly will speak directly to the bases of NAD's claims.  NAD's Complaint is tailor-made for

invocation of the primary jurisdiction doctrine because DOJ's rulemaking activities lie at the very

heart of the claim that NAD seeks to litigate.[1]

      **C.**      **Courts Invoke Primary Jurisdiction In Rulemaking Cases Like This One.**

Although NAD asserts that primary jurisdiction does not apply because DOJ lacks

adjudicative authority over the parties (Opp. at 10–11), in fact federal courts regularly have

invoked the primary jurisdiction doctrine to permit agencies to complete a rulemaking process.

*E.g.*, *Envtl. Def. Fund v. EPA*, 852 F.2d 1316, 1330–31 (D.C. Cir. 1988); *Kappelmann v. Delta*

*Air Lines, Inc.*, 539 F.2d 165, 169–70 (D.C. Cir. 1976); *Netflix*, 2011 U.S. Dist. LEXIS 130443,

*2; *Ass'n of Irritated Residents*, 634 F. Supp. 2d at 1096.[2]

      **D.**      **DOJ Has Not "Authoritatively Interpreted" Title III As Mandating The Relief**
              **NAD Seeks In This Case.**

This Court also should reject NAD's argument that a primary jurisdiction stay or dismissal

is unnecessary because DOJ already has "authoritatively interpreted" Title III and has shared that

interpretation in its Statement of Interest.  (Opp. at 11-12.)

      1.      DOJ's only "authoritative interpretation" is that Title III applies to websites

generally, ANPRM, 75 Fed. Reg. at 43463, a view few courts have been willing to share.[3]

---

[1]     *Astra*, 588 F.3d a 1252 and *In re Colgate-Palmolive Softsoap Antibacterial Hand Soap Mktg. & Sales Practices Litig.*, 2013 U.S. Dist. LEXIS 37152, *23-25(D.N.H. 2013), hold only that the first primary jurisdiction prong is not satisfied when disputed facts preclude determining whether the issue in dispute lies within an agency's regulatory authority.  That is not the case here; NAD concedes DOJ's regulatory authority.

[2]     NAD's reliance on *Arizona ex rel. Goddard v. Harkins Administrative Services, Inc.*, 2011 U.S. Dist. LEXIS 127682 (D. Ariz. 2011), is similarly misplaced, because DOJ rulemaking would not affect the outcome of the theater's affirmative defenses.  *Id.* at *8-9.

[3]     For cases applying the majority view that websites are not physical spaces covered by Title III, see *Cullen v. Netflix, Inc.*, 2015 U.S. App. LEXIS 5257 (9th Cir. 2015); *Earll v. Ebay, Inc.*, 599 Fed. Appx. 695 (9th Cir. 2015); *Access Now, Inc. v. Southwest Airlines, Co.*, 227 F. Supp. 2d 1312, 1320 n.10 (S.D. Fla. 2002); *see also Ford v. Schering-Plough Corp.*, 145 F.3d 601, 612 (3d Cir. 1998); *Parker v. Metropolitan Life Ins. Co.*, 121 F.3d 1006, 1010-11 (6th Cir. 1998) (en banc); *but see Nat'l Fed'n of the Blind v. Scribd Inc.*, 2015 U.S. Dist. LEXIS 34213 (D. Vt.

2.      Even when adopting the minority view applying Title III to websites, DOJ has not endorsed the wholesale "caption or remove" approach NAD advocates.  To the contrary, DOJ suggests only that owners of inaccessible websites might provide web content in "other alternate accessible formats," which can include provision of "Braille, large print, and/or audio materials," September 9, 1996 Letter to Senator Tom Harkin, http://www.justice.gov/crt/foia/readingroom/frequent_requests/ada_tal/tal712.txt, and even customer service by telephone, ANPRM, 75 Fed. Reg. at 43466.

3.      DOJ has never "definitively interpreted" Title III to require *all* public accommodations to "caption or remove" *all* videos posted on *any* website, based on the supposition that an unknown and unaffiliated web surfer might desire captioning of a particular video.  DOJ's Statement of Interest in this case observes only that Title III has "always required that public accommodations provide effective communication to persons with disabilities through the provision of auxiliary aids and services, including, where appropriate, closed captioning." (SOI at 9.)  That statement does not support NAD's one-size-fits-all, "caption or remove" rule, let alone create a valid justification for refraining to invoke primary jurisdiction.[4]

---

2015) (minority view that websites are public accommodations); *Netflix*, 869 F. Supp. 2d 196 (D. Mass. 2012) (same).  None of the latter cases considers the expansive and novel legal theory NAD advances here.

[4]      Moreover, "[i]nterpretations such as those in opinion letters—like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law—do not warrant *Chevron*-style deference."  *Christensen v. Harris Cty.*, 529 U.S. 576, 587 (2000); *see also, e.g., Merrimon v. UNUM Life Ins. Co. of Am.*, 758 F.3d 46, 55 (1st Cir. 2014) (when agency speaks with "less than the force of law" its interpretations are merely persuasive); *M.R. v. Dreyfus*, 697 F.3d 706, 715-16 (9th Cir. 2011) (Bea, C.J., dissenting) ("A 'statement of interest' has not gone through anywhere near the rigorous controls as has a regulation adopted pursuant to the Administrative Procedure Act, or even a Supreme Court amicus brief"); *Goodspeed Airport, LLC v. East Haddam Inland Wetlands & Watercourses Comm'n*, 681 F. Supp. 2d 182, 213 (D. Conn. 2010) (agency Statement of Interest had mere power to persuade and was "lacking power to control").

Similarly, agency settlements with third parties should not merit any deference.  *High Country Home Health, Inc. v. Thompson*, 359 F.3d 1307, 1314-15 (10th Cir. 2004) ("Settlement agreements have no precedential weight"); *Kelley ex rel. Michigan Dep't of Nat. Res. v. F.E.R.C.*, 96 F.3d 1482, 1490 (D.C. Cir. 1996) ("We have previously admonished FERC for attempting to use uncontested settlements as precedent in later cases."); *Illinois-Masonic Med. Ctr. v. Sebelius*, 859 F. Supp. 2d 137, 148 n.11 (D.D.C. 2012) ("The settlement does not create a binding precedent");

4.      Any suggestion from DOJ's enforcement division that existing law supports NAD's "caption or remove" claim is entitled no deference as it is plainly belied by the ANPRM and does not reflect thorough consideration.  *See Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2168-69 (2012) (deference owed to agency interpretations is "proportional to the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade") (internal quotes omitted); *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 212-13 (1988) (declining to defer to inconsistent agency interpretations, because "[d]eference to what appears to be nothing more than an agency's convenient litigating position would be entirely inappropriate").

Only an actual regulation, adopted after formal rulemaking, should be accorded the requisite deference by the courts.  DOJ has announced that such a regulation is coming; the Court should refrain from acting on the consequential and sweeping theory presented by NAD until those regulations have been published and can inform the Court's judgment.

E.      **The ANPRM Confirms That Formulation Of Any Website Accessibility Regulation Will Turn On Considerably More Than "Statutory Interpretation."**

This Court also should reject NAD's next argument, that deferral to DOJ's rulemaking expertise is unnecessary because NAD's claims can be resolved through simple "statutory interpretation," as the relief NAD seeks is not in the statute.  (Opp. at 11.)

1.      DOJ undertakes no "simple task" in attempting to sort through the complex policy and technical concerns relating to website accessibility, as outlined in the ANPRM, including whether regulation would curtail expressive activity; whether to enact any type of safe harbor for existing web content; whether to mandate accessibility for content over which a public

---

*Gascho v. Global Fitness Holdings, LLC*, 863 F. Supp. 2d 677, 693-94 (S.D. Ohio 2012) (consent decrees are not precedential).

accommodation has no control; whether to impose technical or performance based standards for website accessibility; and whether "accessible alternatives" should continue to be permitted. ANPRM, 75 Fed. Reg. at 43465-67; *cf. Michigan v. EPA*, __ S. Ct. __, 2015 U.S. LEXIS 4256, *11 (2015) (whether regulatory action is "appropriate and necessary" requires a consideration of the cost of implementation).

2.      It is not possible to "interpret" Title III's auxiliary aid standard, 42 U.S.C. § 12182(b)(2)(A)(iii); 28 C.F.R. § 36.303(a), to require public accommodations to caption *all* online videos on *all* websites, without regard to a video's source, purpose, context, location or level of demand.  Such a standard clearly "does not exist" today, 75 Fed. Reg. at 43464, and sweeps far beyond the scope of Section 504 and Title III.  *See* Parts II and III, *infra.*

3.      DOJ acknowledges "the complexity and potential impact" of imposing website accessibility standards, which is why the agency sought "input from experts in the field of computer science, programming, networking, assistive technology, and other related fields" in order to formulate "a workable framework for Web site access that respects the unique characteristics of the Internet and its transformative impact on everyday life."  ANPRM, 75 Fed. Reg. at 43464.  NAD's "simple matter of interpretation" argument must be rejected.

**F.      Application of Primary Jurisdiction Would Not Prejudice NAD.**

NAD's final argument, that stay or dismissal without prejudice pending DOJ's rulemaking unacceptably delays resolution, is groundless.  (Opp. at 14; SOI at 5, 14-15.)

1.      The median time from filing to trial of civil cases in this District is 29.1 months. *See* United States District Courts – National Judicial Caseload Profile, http://www.uscourts.gov/ statistics/table/na/federal-court-management-statistics/2015/03/31-2.  This Court likely will not reach the merits of NAD's claims until mid-2017, whereas DOJ may obviate the need for judicial intervention well before that date.

2.      Delay is inevitable whenever important policy and technical questions are decided in rulemaking.  Courts apply the doctrine with these delays in mind, recognizing that all parties benefit by giving the agency time to bring its expertise to bear.  *See Ass'n of Int'l Auto. Mfrs., Inc. v. Comm'r, Mass. Dep't of Envt'l Protection*, 196 F.3d 302, 303–05 (1st Cir. 1999) (retaining primary jurisdiction stay in place until after D.C. Circuit's review of EPA rules, explaining that "absent extraordinary delay or other factors not present here" it would wait "until a final EPA position ha[d] been established"); *Locust Cartage Co. v. Transam. Freight Lines, Inc.*, 430 F.2d 334, 341 (1st Cir. 1970) (waiting five years for agency action); *Barrera v. Comcast Holdings Corp.*, 2014 U.S. Dist. LEXIS 65800, *12-13 (N.D. Cal. 2014) (two-year delay insufficient to overcome the need for FCC's "definitive ruling" on a "highly relevant issue").

3.      As explained above, current law does not, and likely never will, mandate the one-size-fits-all "caption or remove" theory of liability NAD asks the Court to impose.  NAD cannot be prejudiced by a delay in remedying the alleged violation of a nonexistent rule.  Moreover, NAD's argument does not take into account that its members will "suffer" identical delays should it continue to litigate this case without the benefit of DOJ's new regulations.  *See U.S. v. 43.47 Acres of Land*, 2000 WL 306855, at *1 (D. Conn. 2000) (delay "alone does not determine the question of primary jurisdiction or outweigh all of the other factors together").[5]

This case satisfies all elements necessary for invocation of the primary jurisdiction doctrine.  DOJ's proposed website accessibility regulations should inform the complex and thorny policy and regulatory issues required to evaluate the merits of NAD's novel, "caption or remove" theory of liability.  *See Rymes*, 358 F.3d at 91.  MIT's motion to stay or dismiss without prejudice

---

[5]      To be absolutely clear, MIT's Massive Open Online Courses already are captioned.  *E.g.*, https://www.edx.org/course/paradox-infinity-mitx-24-118x (video transcript provided for "Paradox and Infinity" MOOC).

should be granted.

* * * * *

If this Court declines to invoke the primary jurisdiction doctrine, then it should dismiss the Complaint's Section 504 and Title III claims for failure to state a claim because NAD's "caption or remove" theory of liability finds no support in existing law or regulations. Courts regularly warn against inferring specific prescriptions from general prohibitions. *See, e.g.*, *Doe v. Mutual of Omaha Ins. Co.*, 179 F.3d 557, 560 (7th Cir. 1999) (warning against ADA interpretations that would impose an "enormous . . . burden on the retail sector of the economy" and a "vast . . . supervisory responsibility on the federal courts"). Still greater caution is due in this case, which does not involve commercial interests, but puts at stake the ability of Title III- and Section 504- covered entities to use the Internet to freely express ideas.

## II.     THE COMPLAINT FAILS TO STATE A CLAIM FOR VIOLATION OF SECTION 504.

### A.     Section 504 Does Not Recognize The Type Of "Boundless Disparate Impact" Theory NAD Espouses.

Acknowledging that Section 504 does not contain an explicit one-size-fits-all "caption or remove" rule, NAD attempts to derive such a standard from the broad and general language of Section 504 itself. The attempt is unavailing.

1.     Federal courts recognize that Section 504: does not impose an "affirmative action" requirement, *Southeastern Cmty. Coll. v. Davis*, 442 U.S. 397, 410-11 (1979); does not support "the boundless notion that all disparate-impact showings constitute prima facie cases under § 504," *Alexander v. Choate*, 469 U.S. 287, 299 (1985); and must be kept "within manageable bounds." *Id.*; *see generally*, *Wynne v. Tufts Univ. Sch. of Med.*, 932 F.2d 19, 23-25 (1st Cir. 1991) (en banc) ("*Wynne I*"). NAD's expansive, "caption or remove" theory of liability is a paradigmatic example of the type of "boundless-disparate impact showing" against which the

10

Supreme Court warned. *E.g.*, *Greater L.A. Agency on Deafness, Inc. v CNN, Inc.*, 742 F. 3d 414, 425-26 (9th Cir. 2014) (claim that CNN adopted a "policy of displaying online video programming without closed captioning" is a "disparate impact" claim); *see also Tucker v. Tennessee*, 539 F.3d 526, 532 (6th Cir. 2008) ("Acts and omissions which have a disparate impact on disabled persons in general are not specific acts of intentional discrimination against the plaintiff in particular") (internal quotation marks and alterations omitted); *Earll*, 599 Fed. Appx. at 696 (challenge to eBay's aural identification system amounts to impermissible disparate impact claim under state law, because the system "applies to all eBay users, whether hearing-impaired or not").

　　2.　　Under these circumstances, the "countervailing considerations" recognized in *Choate* require that regulators, not this Court, determine in the first instance the precise parameters of Section 504 liability. *R.I. Handicapped Action Comm. v. R.I. Public Transit Auth.*, 718 F.2d 490 (1st Cir. 1983). This case should be dismissed because ED and DOJ have not promulgated website accessibility regulations. *See Disabled in Action of Pa. v. Sykes*, 833 F.2d 1113, 1117 (3d Cir. 1987); *Greater L.A. Council on Deafness, Inc. v. Cmty. Television of S. Cal.*, 719 F.2d 1017, 1023 (9th Cir. 1983).[6]

**B.　　ED's Regulations Do Not Support NAD's "Caption Or Remove" Theory Of Liability.**

　　NAD next unsuccessfully attempts to derive support for its "caption or remove" theory of

---

[6]　　NAD's reliance on *Fortyune v. City of Lomita*, 766 F.3d 1098, 1102 (9th Cir. 2014) is thus misplaced. *Fortyune* stands for the limited proposition that, "the lack of specific regulations cannot eliminate a statutory obligation" not to discriminate. *Id.* at 1102. *Fortyune*'s general rule has no application here because Section 504's "meaningful access" and "effective communication" standards speak to the issue addressed in NAD's complaint, albeit not in the across-the-board, one-size-fits-all form NAD seeks. *E.g.*, *George v. Bay Area Rapid Transit*, 577 F.3d 1005, 1013 (9th Cir. 2009) ("If Congress intended that transit agencies could rely on DOT regulations in the design of their facilities, it defies logic that the transit agencies' protection could be taken away merely by citing a section of the ADA dealing with operations or one establishing a general non-discrimination rule").

liability from the non-specific, "general prohibitions" against discrimination contained in 34

C.F.R. § 104.4 of ED's regulations.[7]

      1.      To the extent accommodations are required for those having no relationship with a

university other than access to the Internet, ED's Section 504 regulations would only obligate

colleges and universities to provide "meaningful access" to the services and benefits being

offered.  *Choate*, 469 U.S. at 301.  Meaningful access does "not require institutions to provide all

requested auxiliary aids and services."  *Argenyi v. Creighton Univ.*, 703 F.3d 441, 448 (8th Cir.

2013) (citing 34 C.F.R. § 104.44(d)(1)).  Instead, the "question . . . is the rather mushy one of

whether some 'reasonable accommodation' is available to satisfy the legitimate interests of *both*

the grantee *and* the handicapped person."  *Wynne I*, 932 F.2d at 23-25; *see also*, *Wynne v. Tufts

Univ. Sch. of Med.*, 976 F.2d 791, 795 (1st Cir. 1992) ("*Wynne II*") ("Reasonableness is not a

constant.  To the contrary, what is reasonable in a particular situation may not be reasonable in a

different situation — even if the situational differences are relatively slight").

      2.      Section 504 and ED's regulations are designed to ensure that grantees make

accommodation decisions "based on facts applicable to individuals and not on presumptions as to

what a class of individuals with disabilities can or cannot do."  DOJ, Section by Section Analysis

of Title II Final Rule, 56 Fed. Reg. 35694, 35703 (July 26, 1991).  It is for precisely this reason

that ED's regulations recognize that colleges and universities "need not have all aids on hand at

all times" and "are not required to maintain a complete braille library."  34 C.F.R. Part 104, App.

A (emphasis added); HEW, Section-by-Section Analysis of Final Section 504 Rule, 42 Fed. Reg.

22672, 22693 (June 3, 1977) (same).  NAD's one-size-fits-all, "caption or remove" theory of

---

[7]     NAD agrees that the facilities accessibility provisions in subpart C of ED's regulations, 34 C.F.R. §§ 104.21 - 104.23, and the post-secondary education provisions in subpart E of its regulations, *id.* §§ 104.41 - 104.47 do not contain any type of captioning rule.  (Opp. at 25-26.)

liability violates these principles by seeking to create a per se rule requiring *all* videos be captioned in advance, and by presuming that all deaf individuals require and are entitled to captioning of all online videos without regard to a particular video's source, purpose, context, location, or level of demand — or for that matter the relationship between the video and the particular user.  *E.g.*, *Bd. of Educ. v. Rowley*, 458 U.S. 176 (1982) (sign language not required when lip reading or other accommodations are sufficient); *Fulton v. Goord*, 591 F.3d 37, 44 (2d Cir. 2009) ("[W]hile all of an inmate's friends and relatives conceivably could be qualified individuals under the [visitor program], it does not follow that any accommodations found to be reasonable, and thus required, for a disabled spouse, would also be reasonable for a more remote disabled relative or acquaintance"); *Rothschild v. Grottenthaler*, 907 F.2d 286, 293 (2d Cir. 1990) (Section 504 access limited to "school-initiated conferences incident to the academic and/or disciplinary aspects of their child's education.  To the extent that the plaintiffs wish to voluntarily participate in any of the plethora of extra-curricular activities that their children may be involved in, we think they, like other parents, must do so at their own expense"); *Falls v. Prince George's Hosp. Ctr.*, 1999 U.S. Dist. LEXIS 22551, *19-23 (D. Md. 1999) ("there is no per se rule" requiring interpreters in hospitals).

### C.  ED's "Dear Colleague Letter" And FAQs Do Not Support NAD's "Caption Or Remove" Theory Of Liability.

NAD next looks for support for its one-size-fits-all approach from more general pronouncements contained in ED's June 29, 2010 "Dear Colleague Letter" ("DCL") and its May 26, 2011 "Frequently Asked Questions" ("FAQs").

1.  These non-regulatory general pronouncements are not entitled to deference.  *See* footnote 4, *supra*.

2.  The DCL and FAQs suggest only that Section 504 can apply to grantees' use of

emerging technologies, including e-readers, to accommodate students; they do not entitle web surfers with no connection to an educational institution to demand accommodations, much less *ex ante* accommodations for materials on its or a third party's website. *Fulton*, 591 F.3d at 44; *Rothschild*, 907 F.2d at 293.

3.      The DCL and FAQ do not mandate a one-size-fits all accessibility remedy for any form of "emerging technology," and do *not r*etreat from *Wynne I*'s longstanding mandate that the evaluation of "reasonable accommodations" is made on a case-by-case basis, after considering the legitimate interests of both the grantee and the handicapped person.  932 F.2d at 23-25.  *See* FAQs 11, Ex. 1 (audio descriptions need not be embedded in course videos), 12 (traditional alternative media can still be used as an accommodation for students) & 14 (Section 504 does not require schools to "provide the same form of emerging technology to a student who is blind or has low vision as it provides to all other students").

**D.      ED Settlements Do Not Support NAD's "Caption Or Remove" Theory Of Liability.**

Finally, NAD unsuccessfully attempts to anchor its one-size-fits-all "caption or remove" theory of liability in a number of settlement agreements and related documents between ED and various colleges and universities.

1.      Legal positions reflected in negotiated settlements are not entitled to deference. *See* footnote 4, *supra.*

2.      Even if such agreements were relevant, they do not support NAD's position.  For example, ED's 2014 settlements with Youngstown State University and the University of Cincinnati disclaim the very across-the-board rule NAD seeks to impose:

> This Agreement does not imply that conformity with Section 508, WCAG, and/or other electronic and information technology standard *is either required or sufficient* to comply with the requirements of either Section 504 or Title II.

Youngstown State University Agreement, http://www2.ed.gov/documents/press-releases/

youngstown-state-university-agreement.pdf, ¶B(1)(a) n. 1 (emphasis added); Univ. of Cincinnati

Resolution Agreement, http://www2.ed.gov/documents/press-releases/university-cincinnati-

agreement.pdf ¶B(1)(a) n. 1.

Agreements containing the foregoing disclaimer, or a more general disclaimer of liability,

*e.g.*, University of Montana, http://www.umt.edu/accessibility/docs/FinalResolutionAgreement.pdf ¶

VII(a), or requiring a school to adopt any "standard or combination of standards" of *its* choice,

*e.g.*, South Carolina Virtual Charter School, http://www2.ed.gov/documents/press-releases/south-

carolina-charter-school-agreement.doc, Actions by District ¶ (a), do not recognize, let alone

create, a one-size-fits-all "caption or remove" rule.

In sum, there is no statutory or regulatory basis for NAD's "caption or remove" legal

theory.  MIT cannot be held liable for violating a per se rule that has not been created through

legislation or formal rulemaking.  For that reason, NAD's Section 504 claim must be dismissed.

## III.    THE COMPLAINT FAILS TO STATE A CLAIM UNDER TITLE III.

NAD's Title III claim suffers from the same deficiencies as its Section 504 claim because

DOJ has not promulgated specific website accessibility standards; NAD's incredibly broad

"caption or remove" rule is utterly inconsistent with Title III's flexible auxiliary aids standard;

and NAD's claims are barred by the accessible goods exception.  NAD concedes the first point, as

it must.[8]  NAD resists dismissal nonetheless, claiming that this is an "auxiliary aids" case, and

---

[8]    *See Indep. Living Res. v. Or. Arena Corp.*, 982 F. Supp. 698, 746 (D. Or. 1997) (rejecting an interpretation of Title III that "would allow any person to file an action contending that, in the opinion of this particular plaintiff, a design feature ought to have been included. . . .  The courts are ill-equipped to evaluate such claims and to make what amount to engineering, architectural, and policy determinations as to whether a particular design feature is feasible and desirable"); *Massachusetts v. E*Trade Access, Inc*., 2005 U.S. Dist. LEXIS 22621, *11 (D. Mass. 2005) ("the remedy of voice-guidance technology, which is not mandated or required by the current DOJ regulations, may not be imposed on the Defendants in this case under the law as it stands, and the DOJ's policymaking authority may not be

that the accessible goods exception does not apply.

**A.      NAD's "Caption Or Remove" Theory Of Liability Cannot Be Grounded In Title III's Auxiliary Aids Standard.**

NAD's insistence that "this is an auxiliary aids case" cannot salvage its Title III claim.

1.      Contrary to NAD's claim (Opp. at 28-29), this Court need not accept as true the Complaint's erroneous legal conclusion that the auxiliary aids standard requires *ex ante* captioning of all videos on all websites for all website users at all times. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Schutza v. Courtesy Chevrolet Ctr.*, 2015 U.S. Dist. LEXIS 49716, *5 (S.D. Cal. 2015) ("Plaintiff's ADA cause of action is based on an incorrect statutory interpretation and fails to state a claim"). The mere fact that the word "caption" appears in the list of possible auxiliary aids in DOJ regulations does not validate NAD's position.

2.      NAD does not claim that MIT failed to provide captioning in response to a particular request by a particular individual. This alone is dispositive of NAD's claims under settled First Circuit precedent. *E.g.*, *Goldstein v. Harvard Univ.*, 77 Fed. Appx. 534, 537 (1st Cir. 2003); *Dudley v. Hannaford Bros. Co.*, 333 F.3d 299, 310 (1st Cir. 2003); *DMP v. Fay School*, 933 F. Supp. 2d 214, 221 (D. Mass. 2013). Instead, NAD alleges that MIT violates Title III by failing to embed closed captioning within videos at the time they are created, before they are posted to the web, and before anyone asks for it.

3.      The legal theory underlying NAD's auxiliary aids argument finds no support in Title III. Even assuming its applicability in the context of this case, the auxiliary aids standard evaluates whether an accommodation request is "reasonable under the circumstances," and "necessary" for the disabled individual. *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 688 (2001); *see*

---

compromised or preempted by the Court"); *United States v. Nat'l Amusements*, 180 F. Supp. 2d 251, 257, 261 (D. Mass. 2001) (same).

*also Starego v. N.J. State Interscholastic Ath. Ass'n*, 970 F. Supp. 2d 303, 308-09 (D.N.J. 2013)

(*Martin*'s "individualized review approach" applies to all ADA claims).  The Act discourages

public accommodations from adopting "bright line rules" like NAD's "caption-or-remove" theory

of liability.  Even though such rules may offer "certain administrative efficiencies," and "even

though an individualized inquiry will consume more resources and involve less logistical ease,

such an inquiry is precisely what the ADA requires."  *Dudley*, 333 F.3d at 310.

    4.      Myriad federal courts have rejected interpretations of the ADA that would impose

an inflexible, bright line rule like that sought by NAD.  *E.g.*, *Noll v. Int'l Bus. Mach. Corp.*, 2015

U.S. App. LEXIS 8375, *2, *10 (2d Cir. 2015) (rejecting plaintiff's claim that Title I of the ADA

required IBM to caption all video files stored on the Company's intranet, because IBM already

provided other effective accommodations); *Enyart v. Nat'l Conf. of Bar Exam'rs, Inc.,* 630 F.3d

1153, 1164 (9th Cir. 2011) (declining to limit accommodations to a specific list of auxiliary aids,

explaining that Title III "analysis depends on the individual circumstances of each case, requiring

a "fact-specific, individualized analysis of the disabled individual's circumstances"); *Loye v. Cty.*

*of Dakota*, 625 F.3d 494, 499 (8th Cir. 2010) (rejecting claim that "a [sign language] interpreter is

mandated for every meeting"); *Jones v. Nat'l Conf. of Bar Exam'rs*, 2011 U.S. Dist. LEXIS

85137, *36 (D. Vt. 2011) (rejecting "Defendant's invitation to decide the case based on what

Congress, the U.S. Department of Justice, other courts, and advocacy groups for the blind have

indicated are reasonable and appropriate in other cases for other individuals presenting different

disabilities").

    In short, MIT concurs with the United States' view that, where an obligation to

accommodate exists, then "in the absence of specific technical standards, the obligation to provide

auxiliary aids and services to ensure effective communication is flexible and is dependent on the

facts particular to the claim . . . ."  (SOI at 15.)  NAD's Title III claim should be dismissed not just because it finds no basis in any statute or regulation, but also because it eschews the required flexibility for an impermissible and inflexible "bright line rule."  *See also Petrano v. Nationwide Mut. Fire Ins. Co.*, 2013 U.S. Dist. LEXIS 45609, *24-25 (N.D. Fla. 2013) (dismissing complaint alleging that the defendant failed to provide a particular auxiliary aid); *Dobard v. S.F. Bay Area Rapid Transit Dist.*, 1993 U.S. Dist. LEXIS 13677, *9-10 (N.D. Cal. 1993) (same).

### B. NAD's "Caption Or Remove" Theory Of Liability Is Barred By The Accessible Goods Exception.

The accessible goods exception recognizes that Title III does not regulate the content or characteristics of goods and services, and does not require that they be reconfigured to include accessibility features.  *E.g.*, *Martin*, 532 U.S. at 698; *Jancik v. Redbox Automated Retail, LLC*, 2014 U.S. Dist. LEXIS 67223, *9 (C.D. Cal. 2014).  NAD's Title III claim should be dismissed because, like Section 504's Braille library exception, the accessible goods exception bars NAD from claiming that colleges and universities must create or stock "Brailled or large print books . . . *or closed-captioned* video tapes."  DOJ, Section by Section Analysis of Title III Final Rule, 56 Fed. Reg. 35544, 35571 (July 26, 1991) (emphasis added).

NAD counters that online videos are "services" for which the captioning must be provided as an auxiliary aid (Opp. 31-32), and that the accessible goods exception is an affirmative defense that cannot be adjudicated on a motion to dismiss.  These arguments fail.

1. The exception applies *both* to "goods" and "services."  *Doe*, 179 F.3d 560 (7th Cir. 1999) (Title III does not make it unlawful to "refus[e] to configure a service to make it as valuable to a disabled as to a nondisabled customer"); *see also Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1115 (9th Cir. 2000) (Title III "does not require provision of different goods or services, just nondiscriminatory enjoyment of those that are provided").

2.      Title III's auxiliary aids standard can in appropriate circumstances limit the general rule that public accommodations need not provide different services for the disabled.  *E.g.*, *Ariz. ex rel. Goddard v. Harkins Amusement Enters., Inc.*, 603 F.3d 666, 672 (9th Cir. 2010). However, this is not an auxiliary aids case.  As explained above, auxiliary aids are not dispensed in bulk, but only pursuant to an "individualized inquiry . . . to determine whether a specific modification for a particular person's disability would be" reasonable and necessary under the circumstances.  *Martin*, 532 U.S. at 668.  NAD's proposed "caption or remove" dispenses with individualized inquiries by requiring MIT to adopt a "bright line" rule requiring across-the-board captioning that is the antithesis of an auxiliary aid.  *Dudley*, 333 F.3d at 310.[9]  Title III does not require public accommodations make such wholesale modifications to the content of their goods and services.  *See also Karczewski v. K Motors, Inc.*, 2015 U.S. Dist. LEXIS 45226, *7 (S.D. Cal. 2015) ("In order to accommodate Plaintiff's desire to test drive a vehicle in its inventory, the dealership would have to alter the nature of the vehicles that it sells. Under the plain terms of Title III's implementing regulations, a car dealership does not have to alter its inventory to include vehicles with special modifications for disabled drivers"); *Jancik*, 2014 U.S. Dist. LEXIS 67223, *9; 28 C.F.R. § 36.307(a).

3.      NAD erroneously contends that the accessible goods exception is an affirmative defense.  To the contrary, it is an exception to liability.  As Judge Posner also explained in *Doe*,

---

[9]      NAD's reliance upon *Harkins* and the other movie theater cases is misplaced.  *Harkins* does not address the obligations of producers to *create* captioned content in the first instance, but only addresses the obligations of theaters to provide "auxiliary aids" to display content that had already been captioned.  603 F.3d at 668; *see also Todd v. Am. Multi-Cinema, Inc.*, 222 F.R.D. 118, 123 (S.D. Tex. 2003) (dismissing Title III claim seeking to compel motion picture studios to include captioning because "[t]he 'movies,' per se, are not a place of a public accommodation"); *Cornilles v. Regal Cinemas, Inc.*, 2002 U.S. Dist. LEXIS 7025, *16-17 (D. Or. 2002) (noting that "movie makers are in control of which movies are open captioned").  In this case, NAD faults MIT for failing to create accessible goods or services, in the form of captioned online video content, in the first instance.  Neither Section 504 nor Title III requires this result.

179 F.3d at 560:

> Had Congress purposed to impose so enormous a burden on the retail sector of the economy and so vast a supervisory responsibility on the federal courts, we think it would have made its intention clearer and would at least have imposed some standards.  It is hardly a feasible judicial function to decide whether shoe stores should sell single shoes to one-legged persons and if so at what price, or how many Braille books the Borders or Barnes and Noble bookstore chains should stock in each of their stores.  *There are defenses to a prima facie case of public-accommodation discrimination, but they would do little to alleviate the judicial burden of making standardless decisions about the composition of retail inventories.*  (Emphasis added.)

It is for this reason that courts invoke the accessible goods exception to dismiss Title III claims

like NAD's.  *Schutza*, 2015 U.S. Dist. LEXIS 49716, *5; *Karczewski*, 2015 U.S. Dist. LEXIS

45226, at *7; *Jancik*, 2014 U.S. Dist. LEXIS 67223 *16.

## CONCLUSION

For all of the foregoing reasons and those set forth in its Memorandum in Support of its

Motion to Stay or Dismiss, MIT's Motion should be granted.

Dated:  July 24, 2015.

MASSACHUSETTS INSTITUTE OF TECHNOLOGY,

By its counsel,

/s/Robert A. Naeve_____

Christopher M. Morrison (BBO#651335)
Emily E. Gianetta (BBO#687585)
JONES DAY
100 High Street
Boston, MA  02110
617-449-6895
617-449-6938
cmorrison@jonesday.com
egianetta@jonesday.com

Robert A. Naeve, *pro hac vice* (CSB# 106095)
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, CA  92612
949-553-7507
rnaeve@jonesday.com

Jeffrey Johnson, *pro hac vice* (DCB#1015307)
JONES DAY
51 Louisiana Avenue N.W.
Washington, DC  20001
202-879-7684
jeffreyjohnson@jonesday.com

## CERTIFICATE OF SERVICE

     I, Robert A. Naeve, hereby certify that the foregoing document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent to those indicated as nonregistered participants by first class mail on July 24, 2015.

Dated: July 24, 2015

                                       /s/ Robert A. Naeve
                                       Robert A. Naeve