UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NATIONAL ASSOCIATION OF THE DEAF, on behalf of its members, C. WAYNE DORE, CHRISTY SMITH, and LEE NETTLES, on behalf of themselves and a proposed class of similarly situated persons defined below,<br><br>       Plaintiffs,<br><br>  v.<br><br>MASSACHUSETTS INSTITUTE OF TECHNOLOGY,<br><br>       Defendant. | Civil Action No. 15-cv-30024-KAR<br><br>**Leave to file granted July 23, 2018** |

**REPLY IN SUPPORT OF DEFENDANT
MASSACHUSETTS INSTITUTE OF TECHNOLOGY'S
MOTION FOR JUDGMENT ON THE PLEADINGS**

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................... 1

ARGUMENT ................................................................................................................................. 2

I. Plaintiffs cannot satisfy the ADA's physical "place" requirement. .................................... 2

    A. *Carparts* does not address whether the ADA requires a nexus with a physical place. ............................................................................................................................ 2

    B. Plaintiffs have failed to meet their burden of establishing that MIT's online content is a "good" or "service" of MIT's physical "places." ...................................... 5

II. The relevant Rehabilitation Act regulations narrow the Act's reach to claims about the "primary function" of a federally funded entity such as MIT. ....................................... 7

III. MIT is not responsible for content that it does not create. .................................................. 8

    A. The ADA does not require MIT to caption content that it merely "makes available." ........................................................................................................................ 8

    B. Even if the ADA or the Rehabilitation Act imposed any liability on MIT for not captioning content that it merely hosts, the CDA immunizes MIT from any such "host" liability. .................................................................................................................. 9

CONCLUSION ............................................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ball v. AMC Entm't, Inc.*,
   246 F. Supp. 2d 17 (D.D.C. 2003) ...................................................................................8

*Carparts Distrib. Ctr., Inc. v. Automotive Wholesaler's Ass'n*
   *of New England, Inc.*,
   37 F.3d 12 (1st Cir. 1994) ...............................................................................1, 2, 3, 5

*Carroll v. Fedfinancial Fed. Credit Union*,
   --- F. Supp. 3d ----, 2018 WL 3212023 (E.D. Va. June 25, 2018) ....................................3, 4, 6

*Castillo v. Jo-Ann Stores, LLC*,
   286 F. Supp. 3d 870 (N.D. Ohio 2018) ..........................................................................3, 4, 6

*Chi. Lawyers' Comm. for Civil Rights Under Law v. Craigslist, Inc.*,
   519 F.3d 661 (7th Cir. 2008) ................................................................................10

*Cornilles v. Regal Cinemas, Inc.*,
   No. 00-cv-173, 2002 WL 31440885 (D. Or. Jan. 3, 2002) ........................................................9

*Del-Orden v. Bonobos, Inc.*,
   No. 17 Civ. 2744, 2017 WL 6547902 (S.D.N.Y. Dec. 20, 2017) ..................................................3

*Gil v. Winn-Dixie Stores, Inc.*,
   257 F. Supp. 3d 1340 (S.D. Fla. 2017) ............................................................................9

*Arizona ex rel. Goddard v. Harkins Amusement Enters., Inc.*,
   603 F.3d 666 (9th Cir. 2010) .................................................................................8

*Gomez v. Bang & Olufsen Am., Inc.*,
   No. 1:16-cv-23801, 2017 WL 1957182 (S.D. Fla. Feb. 2, 2017) ...............................................6

*Green v. Am. Online (AOL)*,
   318 F.3d 465 (3d Cir. 2003) .................................................................................10

*Havens Realty Corp. v. Coleman*,
   455 U.S. 363 (1982) .........................................................................................10

*Haynes v. Interbond Corp. of Am.*,
   No. 17-cv-61074, 2017 WL 4863085 (S.D. Fla. Oct. 16, 2017) ..............................................3

*Kohler v. Bed Bath & Beyond of Cal., LLC*,
   780 F.3d 1260 (9th Cir. 2015) ...............................................................................8

*Marrero-Gutierrez v. Molina*,
    491 F.3d 1 (1st Cir. 2007) ..................................................................................1

*Nat'l Ass'n of the Deaf v. Netflix*,
    869 F. Supp. 2d 196 (D. Mass. 2012) ................................................................4

*Nat'l Fed'n for the Blind v. Target Corp.*,
    452 F. Supp. 2d 946 (N.D. Cal. 2006) ...............................................................5

*Nesmith v. Young Men's Christian Ass'n*,
    397 F.2d 96 (4th Cir. 1968) ...............................................................................4

*Reeves v. Queen City Transp., Inc.*,
    10 F. Supp. 2d 1181 (D. Colo. 1998) ................................................................7

*South Dakota v. Wayfair, Inc.*,
    138 S. Ct. 2080 (2018) ......................................................................................6

*Universal Commc'n Sys., Inc. v. Lycos, Inc.*,
    478 F.3d 413 (1st Cir. 2007) ...........................................................................10

*Wash. State Commc'n Access Project v. Regal Cinemas, Inc.*,
    293 P.3d 413 (Wash. Ct. App. 2013) .................................................................8

**Statutes and Regulations**

42 U.S.C. § 2000a ..........................................................................................................4

47 U.S.C. § 230 ..........................................................................................................2, 9

28 C.F.R. § 36.104 .........................................................................................................6

34 C.F.R. § 104.4(b)(1) ..................................................................................................7

*Nondiscrimination on the Basis of Disability; Notice of Withdrawal of Four
    Previously Announced Rulemaking Actions*,
    82 Fed. Reg. 60,932 (Dec. 26, 2017) ................................................................8

**Other Authorities**

Fed. R. Civ. P. 12 ...........................................................................................................1

H.R. Rep. No. 101-485(II) (1990) .................................................................................4

**INTRODUCTION**

Plaintiffs ask this Court to read Title III of the ADA and section 504 of the Rehabilitation Act in a way that has no limits, allowing Plaintiffs to obtain their preferred remedy: the captioning of all audiovisual content on any website in any way tied to MIT.[1] But no authority supports Plaintiffs' theory that the statutes cover *everything* on the Internet connected in some way to a public accommodation or a recipient of federal dollars, regardless of who created the content, who controls it, or whether the content has anything to do with a "good," "service," "aid," or "benefit" offered by a website's operator.

Such an overbroad reading has no support in the ADA's plain text, its statutory history, or the implementing regulations: Title III requires some nexus to a "good" or "service" offered at a physical *place* of a public accommodation. *Carparts* does not hold otherwise, because the nexus issue was never before the First Circuit.[2] Plaintiffs fall back to the argument that they have established a sufficient "nexus," but none of their nexus arguments establishes how purportedly inaccessible videos deprive Plaintiffs of a "good" or "service" offered by any physical "*place* of public accommodation." Plaintiffs have not alleged, for example, that an uncaptioned video has impeded their access to a lecture hall or a library.

---

[1] Plaintiffs argue that this Court has already determined that their ADA and Rehabilitation Act claims are "cognizable," and that the viability of both claims is well-settled. Opp. 3, 9. Hardly so. MIT's Rule 12(b) motion to dismiss expressly reserved the ADA "place" issue for another day. ECF No. 25, at 29. And the motion did not raise any arguments about Plaintiffs' invocation of the Rehabilitation Act "aid, benefit, or service" regulations, nor did it flag issues related to "host" liability.

[2] Plaintiffs accuse MIT of attempting to "sidestep this Court's prior decision." Opp. 1 & n.3. Contrary to Plaintiffs' assertion that MIT previously raised the same ADA argument, or that such an argument was "waived," Opp. 3 n.6, MIT's motion to dismiss "assume[d] *arguendo* that Title III applies to its websites" and *reserved* a challenge to *Carparts*. ECF No. 25, at 29. And as Plaintiffs recognize (Opp. 1 n.3), under Rule 12(h)(2), MIT may assert Plaintiffs' failure to plead a claim in *either* a Rule 12(b)(6) motion *or* a Rule 12(c) motion for judgment on the pleadings. *See Marrero-Gutierrez v. Molina*, 491 F.3d 1, 6-7 (1st Cir. 2007).

Nor is Plaintiffs' overbroad reading of the Rehabilitation Act correct. Plaintiffs assert that it is enough for them to establish that online videos are one of MIT's "functions." Plaintiffs misunderstand the test for determining what constitutes an "aid, benefit, or service"—the function must be a *primary* one. MIT's "primary function" as an institution of higher education is *not* to create online video or audio content—MIT is not Amazon Studios or Hulu.

At a minimum, Plaintiffs cannot proceed with their attempt to impose liability for content that was not "produced or created by MIT," Compl. ¶ 37, *i.e.*, content that MIT merely hosts or embeds. Plaintiffs assert that the ADA imposes obligations on MIT for just hosting content, and that if MIT can regulate who has access to a system where content is posted, MIT must also be responsible for the content itself, including its accessibility. But if that were true, the ADA would require movie theaters to implement policies that would reject the showing of any film without captions (or other accessibility aids). None of the movie-theater cases has endorsed such a theory. Even if the ADA or the Rehabilitation Act required MIT to caption third-party content that it merely hosts or embeds, the Communications Decency Act ("CDA"), 47 U.S.C. § 230, would immunize MIT from liability. Plaintiffs raise a number of arguments attempting to limit the CDA's scope so that MIT would not be entitled to the Act's immunity, but none of Plaintiffs' proposed limitations has any basis in the statutory text or in cases interpreting the CDA.

## ARGUMENT

### I. Plaintiffs cannot satisfy the ADA's physical "place" requirement.

A. *Carparts* does not address whether the ADA requires a nexus with a physical place.

Plaintiffs' opposition doubles-down on a reading of *Carparts* that has no basis in the actual decision—i.e., suggesting that *Carparts* eliminated the physical "place" requirement. Opp. 4. As MIT explained in its opening memorandum, Carparts was an appeal of a district court decision holding that a person must "physically enter[]" a place of public accommodation

and "utiliz[e] the facilities or obtain[] services therein" in order to be entitled to the ADA's protections. *See Carparts Distrib. Ctr., Inc. v. Automotive Wholesaler's Ass'n of New England, Inc.*, 37 F.3d 12, 18 (1st Cir. 1994); Mem. 9-11. Plaintiffs object to looking at the issues briefed in *Carparts*, but the briefing shows the actual issues that the First Circuit addressed. Whether an ADA plaintiff must have physically entered the defendant's premises was one of them. Whether the plaintiff must prove denial of a "good" or a "service" connected to a physical place of public accommodation (a "facility") was not. Only the latter is before this Court now.

Because *Carparts* does not say what Plaintiffs want it to say, they resort to how other federal courts have described *Carparts*' holding. But those decisions misinterpret *Carparts* in the same way that Plaintiffs do here, often in the process of *rejecting Carparts,* at least as it is interpreted by Plaintiffs. In *Del-Orden v. Bonobos, Inc.*, No. 17 Civ. 2744, 2017 WL 6547902 (S.D.N.Y. Dec. 20, 2017), a federal district court described the First Circuit's position as one extending the ADA to "service providers, including websites, with or without a nexus to a physical place," which it gleaned by misconstruing *Carparts'* discussion of extending the ADA beyond instances where a person "physically enter[s] an actual physical structure." *Id.* at *7 (quoting *Carparts*, 37 F.3d at 19). In several other cases, district courts merely recited the *Southern District of Florida*'s understanding of First Circuit precedent. *Carroll v. Fedfinancial Fed. Credit Union*, --- F. Supp. 3d ----, 2018 WL 3212023, at *4 (E.D. Va. June 25, 2018) (citing *Gil v. Winn Dixie Stores, Inc.*, 242 F. Supp. 3d 1315, 1318 (S.D. Fla. 2017)); *Castillo v. Jo-Ann Stores, LLC*, 286 F. Supp. 3d 870, 877-78 (N.D. Ohio 2018) (same); *Haynes v. Interbond Corp. of America*, No. 17-cv-61074, 2017 WL 4863085, at *4 (S.D. Fla. Oct. 16, 2017) (same). And all of these courts, after articulating what they believed to be the First Circuit's standard, proceeded to *reject* that standard and hold that the statute requires a physical nexus. *See Haynes*,

3

2017 WL 4863085, at *4 (dismissing complaint because plaintiff had not alleged that his "ability to use BrandsMartUSA.com impedes his access to one of Defendant's physical locations"); *accord Carroll*, 2018 WL 3212023, at *6 (analyzing whether "Defendant's website is a service of Defendant's physical, brick-and-mortar location"); *Castillo*, 286 F. Supp. 3d at 881 (analyzing "nexus between Jo-Ann's website and its brick-and-mortar stores").

Plaintiffs also double-down on Judge Ponsor's decision in *National Association of the Deaf v. Netflix*, 869 F. Supp. 2d 196 (D. Mass. 2012), despite the fact that they fail to meet even *Netflix*'s extremely permissive standard. *See* Mem. 12. Even *Netflix* requires a plaintiff to show that a website falls "within a general category listed under the ADA." *Id.* at 201. Plaintiffs do not even attempt to meet this burden, for instance by likening MIT's websites to an enumerated public accommodation such as a "place of entertainment"; instead, they focus on *Netflix*'s discussion of legislative history that purportedly made "clear that Congress intended the ADA to adapt to changes in technology." Opp. 5 (quoting *Netflix*, 869 F. Supp. 2d at 200-01). As MIT already showed (Mem. 11), that discussion pertains to "types of accommodation and services" that covered entities must offer people with disabilities; the statute's *coverage* remains tied to "places." The legislative history confirms that Congress intended for Title III to combat the "lack of *physical* access to facilities," i.e., lack of access to *places* of public accommodations. H.R. Rep. No. 101-485(II), at 34-35 (1990); Mem. 5-6.[3] Plaintiffs have no direct response to these points, nor do they offer any rebuttal to MIT's plain-text and regulatory arguments.

---

[3] Plaintiffs' discussion of the Civil Rights Act of 1964, 42 U.S.C. § 2000a, and *Nesmith v. Young Men's Christian Association*, 397 F.2d 96 (4th Cir. 1968), misses the point. Title III does indeed list more "public accommodations" than the original Civil Rights Act. Mem. 5; Opp. 6. But Congress still opted to tether Title III's anti-discrimination principle to *physical locations*—in other words, it kept the Civil Rights Act's "place" requirement, but expanded the types of "places of public accommodation" that are within the ADA's reach.

B. <u>Plaintiffs have failed to meet their burden of establishing that MIT's online content is a "good" or "service" of MIT's physical "places."</u>

Because nothing in *Carparts* allows Plaintiffs to advance their Title III claim without *any* connection to a physical "place" of public accommodation, Plaintiffs argue in the alternative that they satisfy the nexus requirement in three ways: (1) the lack of captioning for MIT's online content will "impact the educational offerings occurring in its live classrooms"; (2) the online content depicts "lectures, meetings, or talks given by MIT personnel . . . on campus"; and (3) MIT must produce its online content and provide "streaming on websites" at "various physical places" *somewhere*. Even if true, none of these establishes the nexus that Title III demands.

First, while Plaintiffs claim that the lack of captioning for MIT's online content (particularly Open Course Ware/OCW) will "impact the educational offerings occurring in [MIT's] live classrooms," Opp. 7, they do not assert that they (or anyone else) will be *denied* access to those offerings as a result of the lack of captioning. Plaintiffs have not alleged that students have not been able to access "problem sets and exams for study and practice" due to the lack of captioning, that a prospective student was not able to "check[] out MIT" because some OCW content lacked captions,[4] or that the lack of captioning for some OCW content prevented instructors from "refer[ring] students to OCW for part of their coursework." *See* Opp. 7. That makes the Plaintiffs' ADA claim fundamentally different from cases like *National Federation for the Blind v. Target Corp.*, 452 F. Supp. 2d 946 (N.D. Cal. 2006), in which the plaintiffs alleged that the Target website's lack of an accommodation for the blind "impede[d] the full and fair enjoyment of the goods and services offered" at a brick-and-mortar location. *See id.* at 956.

---

[4] Nor could they plausibly allege such a lack of captioning, as MIT has captioned all OCW content posted in the last four years.

5

Second, Plaintiffs try to fashion a nexus from online content that depicts events at "lectures, meetings, or talks given by MIT personnel . . . on campus." But the nexus requirement is not an open-ended "minimum contacts" test. Plaintiffs fail to explain how the online content's purported lack of accessibility deprives them of any "good" or "service" of any physical "place" at MIT. The lack of captioning for some online content does not prevent Plaintiffs (or anyone else) from attending a public lecture or an event on campus.

Finally, Plaintiffs cursorily acknowledge the regulatory definition of a "place," i.e., a "facility," 28 C.F.R. § 36.104, but they fail to explain how they are denied a "good" or "service" of a "building[], structure[], site[], . . . equipment, . . . or other real or personal property." Rather, Plaintiffs claim the nexus requirement is satisfied because MIT must "house equipment," "produce Online Content," and "provide streaming" at *some* physical place.[5] Opp. 9. That is beside the point. Plaintiffs are not alleging that the lack of captioning for some of MIT's online content prevents them from having equipment "housed" at MIT, obtaining video production services from MIT, or hosting streaming content. Plaintiffs cannot satisfy the nexus requirement merely by pointing out that content "does not suddenly appear out of nowhere"; rather, they must show that the inaccessible online content impedes access to a "good" or a "service" offered at a physical location at MIT. *Carroll*, 2018 WL 3212023, at *6; *Castillo*, 286 F. Supp. 3d at 881-82; *Gomez v. Bang & Olufsen Am., Inc.*, No. 1:16-cv-23801, 2017 WL 1957182, at *3 (S.D. Fla. Feb. 2, 2017) ("[W]ebsites are not covered by the ADA unless some function on the website hinders the full use and enjoyment of a physical space."). Because Plaintiffs have made no such allegation, this Court should grant judgment to MIT on Plaintiffs' ADA claim.

---

[5] MIT adopts Harvard's arguments regarding the irrelevance of *South Dakota v. Wayfair, Inc.*, 138 S. Ct. 2080 (2018). Reply in Support of Mot. for Judgment on the Pleadings at 7 n.6, No. 15-cv-30023 (D. Mass. filed Sept. 28, 2018) (ECF No. 152) ("Harvard Reply").

## II. The relevant Rehabilitation Act regulations narrow the Act's reach to claims about the "primary function" of a federally funded entity such as MIT.

Plaintiffs' response to MIT's Rehabilitation Act argument begins with an irrelevancy: they cite extrinsic evidence purportedly showing that "MIT has received more than . . . $1.4 billion from at least 20 federal agencies." Opp. 9. MIT's sources of federal funding are not relevant here because the only regulations that Plaintiffs invoke as part of their case are the ones promulgated by the Department of Education. Compl. ¶ 96. And those regulations prohibit discrimination in an entity's provision of an "aid, benefit, or service," 34 C.F.R. § 104.4(b)(1), which, under the relevant caselaw, means the "primary function" of the entity. *Reeves v. Queen City Transp., Inc.*, 10 F. Supp. 2d 1181, 1184 (D. Colo. 1998).[6] Because the "service" at the heart of Plaintiffs' Rehabilitation Act claim is the creation of online audio and video content, and that "service" is not one of MIT's "primary functions" as a post-secondary institution, Plaintiffs' Rehabilitation Act claim must fail.

Plaintiffs fail to understand the "primary function" test. The question is not whether an "online presence" is "*a* function of MIT"; instead, the relevant inquiry is whether that function is a *primary* one. Plaintiffs' "*a* function" approach is merely a restatement of their argument that the Rehabilitation Act is a "catchall" statute that covers everything a covered entity does—an argument that entirely ignores the fact that the "aid, benefit, or service" regulations are meant to limit the obligations that the Rehabilitation Act imposes. *See* Harvard Reply at 9-10.[7]

---

[6] Plaintiffs assert that MIT's "primary function" argument has "no statutory or regulatory support." Opp. 10. Hardly so. As Harvard explains in its Reply, courts have applied that test to implement the contrast between the Rehabilitation Act's broad, unrestricted use of the phrase "program or activity" and the regulations' use of the narrower phrase "aids, benefits, or services." Harvard Reply 10.

[7] As part of their Rehabilitation Act argument, Plaintiffs contend "the Departments of Justice and of Education have already recognized the necessity of captioning for accessing online content,

### III. **MIT is not responsible for content that it does not create.**

A. The ADA does not require MIT to caption content that it merely "makes available."

MIT agrees with Plaintiffs that, when a party is not "in the business of creating content," its obligations under the ADA are "much more circumscribed." Opp. 16. When MIT is merely hosting content, it is not "in the business of creating content." Accordingly, as the movie theater cases demonstrate, MIT's responsibility is only to enable access to accessible features provided by the content's creator. *See Arizona ex rel. Goddard v. Harkins Amusement Enters., Inc.*, 603 F.3d 666, 668-72 (9th Cir. 2010); *Ball v. AMC Entm't, Inc.*, 246 F. Supp. 2d 17, 20, 25 (D.D.C. 2003); *Wash. State Commc'n Access Project v. Regal Cinemas, Inc.*, 293 P.3d 413, 424 (Wash. Ct. App. 2013). Yet despite their admission about the "circumscribed" obligations of those not in the "business of creating content," Plaintiffs nevertheless seek to hold MIT liable for content "regardless of whether that content was produced or created by MIT." Compl. ¶ 37.

Plaintiffs argue that, because MIT is "the arbiter in determining what Online Content is posted, and MIT can implement a policy that would ensure that all aural content be captioned as a precondition for the use of . . . MIT Platforms," MIT is responsible for all of the content on its websites, full stop. Opp. 16.[8] But Plaintiffs cite no authority for this sweeping proposition—i.e.,

---

making the relief sought here straightforward and precisely targeted to remedy the violation." Opp. 11. Every part of that statement is wrong. Neither DOJ nor ED has said anything about "the necessity of captioning for accessing online content" specifically—to the contrary, DOJ has *withdrawn* its captioning rulemaking for Title II entities (and its Title III rulemaking along with it). *Nondiscrimination on the Basis of Disability; Notice of Withdrawal of Four Previously Announced Rulemaking Actions*, 82 Fed. Reg. 60,932 (Dec. 26, 2017).

[8] Plaintiffs also suggest that content by MIT's "faculty"—over whom MIT exercises no editorial control or discretion—is content that *MIT* "creates or develops." Opp. 15 n.20. But the ability to exercise control is part of what determines whether a party is responsible for implementing an accommodation under the ADA. *See, e.g.*, *Kohler v. Bed Bath & Beyond of Cal., LLC*, 780 F.3d 1260, 1264 (9th Cir. 2015). If MIT cannot exercise control over the speech of those individuals

8

that MIT may be held liable just because it is the gatekeeper for other people's content and may impose new "gates" to keep out some of that content.[9] If Plaintiffs' argument were the law, movie theaters would be forced to turn away films that studios have not captioned and stock only captioned films merely because they have the power to impose such a restriction. That is clearly not what the ADA requires.[10]

> B. <u>Even if the ADA or the Rehabilitation Act imposed any liability on MIT for not captioning content that it merely hosts, the CDA immunizes MIT from any such "host" liability.</u>

When MIT hosts or embeds content that it has not created and allows such content to be shown on its websites, MIT acts as a "provider" of an "interactive computer service" and is thus protected by the Communications Decency Act, 47 U.S.C. § 230. Mem. 19-20. In addition to their CDA arguments made against Harvard, Plaintiffs offer two arguments as to why that protection should not apply here, but none of those arguments has any basis in the CDA or cases interpreting the Act.

First, Plaintiffs argue that the CDA's shield applies only when a plaintiff seeks to hold a "provider" liable for the *substance* of content. To make this argument, Plaintiffs cherry-pick language from CDA cases in which courts refer briefly to (1) "information" (2) "originating with a third party user of the service." Opp. 12. Plaintiffs are focusing on the wrong half of their

---

affiliated with it—which, for reasons of academic freedom and editorial independence, it cannot—then MIT is not responsible for those individuals' communications.

[9] *Gil v. Winn-Dixie Stores, Inc.*, 257 F. Supp. 3d 1340 (S.D. Fla. 2017), does not stand for the proposition that MIT is responsible for third-party content that it did not create. The third-party content in that case is content that was created *for Winn-Dixie*. Bench Trial Tr. 92:7-9, *Gil v. Winn-Dixie Stores, Inc.*, No. 16-cv-23020 (S.D. Fla. June 5, 2017) (outsourced pharmacy website); *id.* at 112:16-21 (outsourced rewards program).

[10] *Cf. Cornilles v. Regal Cinemas, Inc.*, No. 00-cv-173, 2002 WL 31440885, at *6 (D. Or. Jan. 3, 2002) ("Defendants have no obligation to comply with Plaintiffs' demand to purchase specially-altered movies to accommodate Plaintiffs' disability.").

cherry-picked language; the touchstone of the CDA is not substance, but rather whether the content is someone else's. *See Universal Commc'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 419 (1st Cir. 2007). "Information" for purposes of the CDA does not need to have any substance; so Plaintiffs cannot be right that the CDA is intended only to protect against liability for what a message says. *See, e.g.*, *Green v. Am. Online (AOL)*, 318 F.3d 465, 469, 471 (3d Cir. 2003) (rejecting the argument that "the term 'information' is restricted to 'communication or reception of knowledge or intelligence'").[11]

Second, Plaintiffs argue that allowing MIT to invoke the CDA's immunity as a "provider" of an "interactive computer service" would frustrate the ADA's "broad and flexible" antidiscrimination mandate. But that argument cannot be reconciled with *Chicago Lawyers' Committee*. The Fair Housing Act, like the ADA, is a statute with a "broad, remedial intent." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380 (1982). Yet the Seventh Circuit held that the protection from liability Congress subsequently enacted in the CDA is a "general" one, and for that reason, Congress did not need to give the Fair Housing Act special consideration before placing it within § 230(c)(1)'s reach. *See Chi. Lawyers' Comm. for Civil Rights Under Law v. Craigslist, Inc.*, 519 F.3d 661, 671 (7th Cir. 2008) (Congress had no need to "traipse through the United States Code" specifying every statutory cause of action the CDA affects). So too here: the "general" rule of the CDA does not exempt the ADA or Rehabilitation Act.

## **CONCLUSION**

This Court should grant judgment in MIT's favor on both claims for relief.

---

[11] MIT also adopts Harvard's arguments about the lack of a substance/accessibility distinction, as well as Harvard's arguments about the scope of the CDA. Harvard Reply 14-15.

10

Dated: October 12, 2018                    Respectfully submitted,

/s/ Roberto M. Braceras
Roberto M. Braceras (BBO# 566816)
Jennifer B. Luz  (BBO# 657739)
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, Massachusetts 02210
Tel.:  617.570.1000
Fax:  617.523.1231
rbraceras@goodwinlaw.com
jluz@goodwinlaw.com

William M. Jay (*pro hac vice*)
Andrew Kim (*pro hac vice*)
GOODWIN PROCTER LLP
901 New York Avenue, N.W.
Washington, DC 20001
Tel.:  202.346.4000
Fax:  202.346.4444
wjay@goodwinlaw.com
andrewkim@goodwinlaw.com

Janet Grumer (*pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
865 S. Figueroa Street, Suite 2400
Los Angeles, CA 90017
Tel.:  213.633.6866
Fax:  213.633.4231
janetgrumer@dwt.com

*Attorneys for Defendant*
*Massachusetts Institute of Technology*

**CERTIFICATE OF SERVICE**

I, Roberto M. Braceras, certify that this document filed through the ECF system will be served on October 12, 2018 electronically to the registered participants as identified in the Notice of Electronic Filing (NEF) and by first-class mail, postage prepaid on those identified as non-registered participants.

/s/ Roberto M. Braceras