UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NATIONAL ASSOCIATION OF THE DEAF, on behalf of its members, C. WAYNE DORE, CHRISTY SMITH, LEE NETTLES, on behalf of themselves and a proposed class of similarly situated persons defined below,<br><br>Plaintiffs,<br><br>v.<br><br>MASSACHUSETTS INSTITUTE OF TECHNOLOGY,<br><br>Defendants. | Civil Action No. 15-30024-KAR |

**PLAINTIFFS' UNOPPOSED MOTION FOR AWARD OF FEES AND COSTS**

**I.      INTRODUCTION**

After years of vigorous advocacy, litigation, and negotiation, Plaintiff National Association of the Deaf ("NAD") as well as Plaintiffs C. Wayne Dore, Christy Smith, and Lee Nettles (collectively, "Plaintiffs") on behalf of themselves and the Settlement Class reached a Settlement, memorialized in a Consent Decree, with Massachusetts Institute of Technology ("NAD") to resolve this action. On February 18, 2020, Plaintiffs moved for preliminary approval of the Settlement and for certification of the class for settlement purposes. Dkt. 194. On March 27, 2020, the Court issued an order certifying the proposed class for settlement purposes ("Settlement Class") and granting preliminary approval of the Settlement. Dkt. 209. Pursuant to that order, any objections to the Settlement must be filed by May 19, 2020 and the Parties' responses to those objections must be filed by May 26, 2020. A fairness hearing is scheduled for July 14, 2020. *Id.* at 10.

Now, consistent with the Parties' agreement and as set forth in the Consent Decree, Class Counsel file the instant Motion seeking an award of fees and costs in the amount of $1,050,000. MIT does not oppose the Motion.

## II. OVERVIEW OF THE LITIGATION & CLASS COUNSEL'S WORK

Plaintiff NAD first approached MIT almost six years ago in an amicable attempt to gain access to the speeches, talks, lectures, courses, and other important material that MIT makes publicly available on its websites and platforms. For much of this content, MIT did not provide equal, effective, and timely access to the 48 million people who are deaf or hard of hearing, because many of the videos do not have auxiliary aids – such as closed captions – that would allow deaf and hard of hearing users to access the videos, and because many of the videos that do have captions have inaccurate or incoherent captions. Plaintiffs alleged that MIT, by failing to make its online content accessible to deaf and hard of hearing people, was acting in violation of Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794 *et seq.*, and Title III of the Americans with Disabilities Act of 1990 ("Title III"), 42 U.S.C. § 12181 *et seq.*

On March 31, 2014, Class Counsel[1] wrote to MIT, described their concerns with the university's failure to caption publicly-available online content, explained that such failure was a violation of Title III and Section 504, and proposed that the parties enter negotiations in lieu of litigation. Declaration of Timothy P. Fox ("Fox Decl.") ¶ 10, attached as Exhibit 1.[2] The parties negotiated for much of the remainder of the year, but were unable to resolve Plaintiffs' claims. *Id.* ¶ 15.

---

[1] This Court has appointed the undersigned attorneys as Class Counsel. *See* Dkt. 209 at 10.

[2] The declarations of Joseph M. Sellers, Thomas P. Murphy, Arlene Mayerson, Timothy P. Fox, Bill Lann Lee, and Howard Rosenblum (collectively, "Class Counsel Declarations") are filed simultaneously with this Motion. *See* Exhibits 1-6.

During that period of pre-suit negotiations, Class Counsel devoted time not only to negotiating with MIT and researching captioning technology and solutions, it also devoted time to researching and responding to numerous legal arguments MIT made denying responsibility for captioning its online content. Class Counsel also reached out to and worked with attorneys from the Department of Justice ("DOJ"), the agency with responsibility for implementing Title III and Section 504. After negotiations broke down, Class Counsel continued to conduct extensive legal and fact research in preparation for drafting the complaint. Significantly, during that pre-complaint period, Class Counsel reviewed hundreds of MIT web pages containing audio/visual content, devised a comprehensive litigation plan, and conducted widespread outreach to potential class members. Fox Decl. ¶¶ 12-16, Ex. 1; Declaration of Bill Lann Lee ("Lee Decl.") ¶¶ 15-19, attached as Exhibit 2.

The class action complaint in this case was filed in February 2015. Dkt. 1. MIT filed a motion to dismiss on May 11, 2015, seeking dismissal of the Plaintiffs' complaint or, in the alternative, to stay the case based on the doctrine of primary jurisdiction. Dkt. 24. Between May and September 2015 Class Counsel conducted legal research and drafted their opposition to the motion (filed June 25, 2015), reviewed Defendant's reply brief (filed July 24, 2015), and prepared for oral argument. Dkt. 35, 41. Class Counsel's work with the DOJ also paid off when that agency submitted a statement of interest in support of Plaintiffs' opposition to the motion to dismiss. Dkt. 34. Argument on the motion to dismiss took place on September 10, 2015. Dkt. 43. Plaintiffs filed Notices of Supplemental Authorities on November 20, 2015 and November 24, 2015, and MIT filed a Notice of Supplemental Authorities on December 4, 2015. Dkt. 47-49.

On February 9, 2016, this Court issued a Report and Recommendation ("R&R") denying in its entirety MIT's motion. Dkt. 51. MIT then retained new counsel, who filed objections to the

R&R on March 18, 2016. Dkt. 63. On April 8, 2016, Plaintiffs filed a reply to Defendant's objections. Dkt. 67. MIT filed a reply on April 29, 2016, and Plaintiffs filed a notice of supplemental authorities on September 23, 2016. Dkt. 71, 76. On November 4, 2016, Judge Mark G. Mastroianni adopted the R&R in its entirety, and MIT filed its answer to the complaint on December 9, 2016. Dkt. 78, 83.

Beginning in January 2017, the parties engaged in a series of in-person meetings and exchanged written communications in an attempt to settle the case and/or narrow the areas of disagreement, including several in-person meetings in Boston. Fox Decl. ¶ 19, Ex. 1. Scheduling/Status Conferences were held in the matter on February 14, 2017 and May 10, 2017, during which the parties updated the Court on attempts to settle and or narrow the matter and informed the Court that the parties had agreed to formal private mediation. Dkt. 91, 98. As a result, the Court agreed to postpone the issuance of a scheduling order pending the outcome of mediation.

Between May 2017 and June 2018, the parties attempted to settle the matter through mediation with Linda Singer of JAMS in Boston, during which time the Court was apprised of the status of the negotiations through the filing of Status Reports and Status Conferences. Class Counsel prepared a detailed Mediation Statement, made detailed requests for information to MIT, and participated in mediation sessions with Attorney Singer on September 12, 2017, March 28, 2018, and April 30, 2018. Dkt. 106. During that time period, the parties also engaged in telephonic negotiation sessions with Ms. Singer and exchanged detailed correspondence such as draft term sheets, draft consent decrees, and letters regarding factual information sought by Class Counsel and other legal and factual issues being discussed during the negotiations. In addition, the parties drafted and filed status reports with the Court and attended status conferences on

August 2, 2017, September 25, 2017, November 27, 2017, January 31, 2018, April 2, 2018, and May 21, 2018. Dkt. 103, 107, 111, and 115.

After attempts to settle the matter concluded unsuccessfully the Court issued a scheduling order on July 23, 2018. Dkt. 143, 146. The parties then began to engage in discovery. The parties exchanged written discovery in the form of interrogatories, document requests and requests for admissions. Class Counsel also reviewed and analyzed documents exchanged during discovery, prepared and served a letter to MIT regarding alleged deficiencies in Defendant's discovery responses, and began preparations for depositions, including requests for designation of individuals by MIT pursuant to Rule 30(b)(6). Declaration of Thomas P. Murphy ("Murphy Decl.") ¶ 5, attached as Exhibit 3; Fox Decl. ¶ 21, Ex. 1.

Additionally, MIT produced comprehensive electronic policies, procedures, processes, webpages, and additional records and information that Class Counsel cataloged, reviewed and analyzed. Likewise, Plaintiffs produced hundreds of documents in response to MIT's discovery. Class Counsel also engaged in numerous communications with expert consultants and retained expert witnesses during this time period, both in preparation for depositions and other discovery-related matters and in anticipation of and preparation for expert reports and analyses Plaintiffs intended to use in support of class certification and, if necessary, trial. Fox Decl. ¶¶ 20, 22, Ex. 1.

During the discovery phase, on August 24, 2018, MIT filed a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). Dkt. 148. Plaintiffs' opposition was filed on September 24, 2018. Dkt. 152. MIT filed a reply on October 12, 2018, and Class Counsel then prepared for and argued the motion on October 30, 2018. Dkt. 153, 154.

On March 28, 2019, the Court issued an order denying in part and granting in part MIT's motion. Dkt. 159. Thereafter, the parties agreed to engage in another round of settlement

5

discussions, and the Court granted the parties' Joint Motion to Stay the proceedings on May 10, 2019. Dkt. 163. The parties then engaged in informal settlement discussions which identified issues on which the parties agreed as well as narrowed the areas of disagreement, and on August 23, 2019 the matter was referred to mediation before Magistrate Judge Judith Dein. Dkt. 171.

Class Counsel prepared and sent a detailed mediation statement, and the parties engaged in mediation sessions with Judge Dein on October 7, 2019 and February 4, 2020. Dkt. 195. Through these negotiations, a final settlement was reached, and the Consent Decree executed on February 6, 2020. Dkt. 195. Plaintiffs drafted and filed the Motion to Certify the Class for Settlement Purposes and for Preliminary Approval of the Class Action Settlement on February 18, 2020, and a Motion Hearing was held with the Court on March 17, 2020. Dkts. 194-95, 205. The motion was granted, and the proposed Notice Plan was approved on March 27, 2020. Dkt. 209. The fairness hearing in this matter is set for July 14, 2020. *Id.*

## III. PLAINTIFFS AND THE SETTLEMENT CLASS ARE ENTITLED TO RECOVER THEIR REQUESTED ATTORNEYS' FEES AND COSTS.

### A. Legal Standard

Pursuant to Section 10 of the Consent Decree, MIT agreed not to oppose Class Counsel's motion for attorneys' fees and costs in the amount of $1,050,000. Plaintiffs agreed to accept this amount despite the fact that, as described in greater detail in this motion and the accompanying declarations, the fees and costs they actually incurred, based on detailed contemporaneous time records, are far greater. Class Counsel now respectfully request that this Court approve an award of $1,050,000 pursuant to Federal Rule of Civil Procedure 23(h), which permits the Court to award "reasonable attorney's fees and nontaxable costs that are authorized by . . . the parties' agreement."

6

The claims in this case arose under Title III and Section 504, both of which provide that the prevailing party is entitled to its reasonable attorneys' fees and costs. 42 U.S.C. § 12205 (Title III); 29 U.S.C. § 794a(b) (Section 504). While Plaintiffs are entitled to recover their fees and costs pursuant to Rule 23(h), should the Court grant final approval to the proposed Consent Decree, they will also be prevailing parties in this matter. Tracking the First Circuit's standard:

- the consent decree constitutes a court-ordered change in the legal relationship among the parties, as it orders MIT to take certain actions to caption its online content, *see, e.g.,* Consent Decree, Dkt. 195-1, at Sections 4-5;

- there will be "judicial approval of the relief vis-à-vis the merits of the case," as this Court is required, by Rule 23(e)(2) to determine whether the settlement is "fair, reasonable, and adequate;" and

- there will be continued judicial oversight by the Court "for the purpose of ensuring compliance and enforcing the provisions of this Consent Decree and ability to enforce the obligations imposed on the parties," *see* Consent Decree, Dkt. 195-1, at Section 8.

*See Hutchinson ex rel. Julien v. Patrick*, 636 F.3d 1, 9-10 (1st Cir. 2011).

    B.    <u>Time Spent by Class Counsel was Reasonable and Fully Compensable</u>

        i.    *Summary of the Time Spent*

Class Counsel spent a total of approximately 3,800 hours over the course of over five years on this matter. *See generally* Class Counsel Declarations, Exs. 1-6. As detailed above and in the attached declarations, Class Counsel spent over a year attempting to negotiate to resolve this matter informally, a year during which they also did extensive research both in support of their claims and to respond to the many arguments MIT raised for refusing to caption or limiting

7

its obligation to caption.[3] During the pendency of the case, MIT moved to dismiss, lost, filed objections to that order, lost again, and later filed a second motion to dismiss pursuant to Fed. R. Civ. P. 12(c), all of which required extensive research and briefing by Class Counsel, and preparation for two oral arguments to this Court.

Following the adoption of this Court's R&R in November 2016 – denying MIT's first motion to dismiss – the parties engaged in over a year of mediation with Ms. Singer's assistance, meeting repeatedly and exchanging many letters, emails, and drafts. Mediation failed, and MIT's Rule 12(c) motion followed, along with written discovery and depositions. Throughout this time, Class Counsel were also working with potential experts and continuing to gather evidence of MIT's violations of Title III and Section 504. Following the Court's order on the Rule 12(c) motion, the parties restarted settlement negotiations, initially on their own and eventually with the assistance of Magistrate Judge Dein. These negotiations were ultimately successful and resulted in the Consent Decree currently before the Court.

Moreover, throughout the litigation, Class Counsel proactively sought to exercise billing judgment by implementing systems to avoid duplication and achieve economies. *See generally* Class Counsel Declarations, Exs. 1-6. For example, during the discovery period, Class Counsel developed a committee system through which attorneys were assigned to specific discovery tasks, that is, rather than having every organization work on expert discovery, a selection of attorneys were tasked with managing this work; similarly, Class Counsel convened a subset of attorneys to manage written discovery and another group to lead oral discovery. This committee system allowed Class Counsel to avoid duplication and ensured that only the necessary personnel

---

[3] This pre-suit time is compensable as it was "'both useful and of a type ordinarily necessary to advance the ... litigation to the stage it reached.'" *Hutchinson*, 636 F.3d at 15 (quoting, among others, *Webb v. Bd. of Educ. of Dyer Cnty., Tenn.*, 471 U.S. 234, 243 (1985)).

8

were billing time to the case for the work performed. Additionally, wherever possible Class Counsel assigned work to timekeepers with lower billing rates. *See, e.g.*, Declaration of Joseph M. Sellers ("Sellers Decl.") ¶ 10, attached as Exhibit 4. Finally, because Class Counsel were simultaneously litigating the instant case and a very similar case against Harvard University, Class Counsel were careful to allocate time to work done for one or the other of these cases, and – for work relevant to both cases – to split the time and allocate half to each case. *See generally* Class Counsel Declarations, Exs. 1-6.

### ii. *Novelty and Complexity of Issues Required Multiple Firms*

Plaintiffs were represented by either four or five firms during the course of this litigation. Each of these firms brought different expertise to the representation, and the lawyers were careful to assign tasks so as not to duplicate work. *See generally* Class Counsel Declarations. As this Court has recognized, this case "raises complex and unresolved issues under Title III and the Communications Decency Act of 1996 ["CDA"], 47 U.S.C. § 230." Dkt. 209 at 7. This is reflected, too, in MIT's decision to file multiple dispositive motions arguing primary jurisdiction; the applicability of the DOJ's architectural standards, postsecondary education rules, and the "accessible or special goods" provision; the lack of guidance concerning online content; the applicability of Title III *per se* to online content;[4] whether online content is an aid, benefit, or service under Section 504; MIT's liability for content it posts on third-party websites; and the applicability of the CDA to various types of online content.[5]

Where, as here, the litigation is novel and complex, the involvement of multiple attorneys is reasonable. "Given the complexity of modern litigation, the deployment of multiple attorneys

---

[4] *See* Memorandum in Support of Motion to Stay or Dismiss, Dkt. 25.

[5] *See* Memorandum of Law in Support of MIT's Motion for Judgment on the Pleadings. Dkt 149.

9

is sometimes an eminently reasonable tactic." *Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 297 (1st Cir. 2001). Indeed, "[e]ffective preparation and presentation of a case often involve the kind of collaboration that only occurs when several attorneys are working on a single issue." *Id*. Especially in light of the significant reduction in lodestar that Class Counsel has accepted, they should not be penalized for working as a team to address these novel and complex issues.

          iii.  *Time was Reasonable in Light of Defendants' Actions*

It was Plaintiffs' hope that the parties could work together on a solution to MIT's lack of captioning rather than engaging in litigation. Their March 2014 letter to MIT's general counsel stated, that "[t]his approach would allow us to share information to develop workable solutions without the expense and distractions of litigation ...." Fox Decl. ¶ 10, Ex. 1. As noted above, instead of devoting this time to crafting a solution, MIT raised numerous arguments about why it should not have to caption all or most of its content, and then once the litigation was underway, moved to dismiss, objected to this Court's R&R, and later filed a second motion to dismiss. MIT refused to provide discovery identifying its online video content, causing Class Counsel to work with a consulting expert to develop the technical tools to do this, and then to assign paralegals to review and code a large subset of this video content. Fox Decl. ¶ 23, Ex. 1.

Throughout the negotiation and litigation of this case, Class Counsel has acted reasonably both to establish Plaintiffs' case and to respond to MIT's actions. "[O]ne of the factors useful in evaluating the reasonableness of the number of attorney hours in a fee request is 'the responses necessitated by the maneuvering of the other side.'" *Robinson v. City of Edmond*, 160 F.3d 1275, 1284 (10th Cir. 1998); *see also City of Riverside v. Rivera*, 477 U.S. 561, 580 n.11 (1986) ("The government cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response"), *quoted in Gay Officers Action League*, 247 F.3d at 298.

        iv.  *Plaintiffs Obtained an Excellent Result*

The result of the time Class Counsel devoted to this matter was an excellent settlement that will ensure and make enforceable broad access to MIT's online content for people who are deaf or hard of hearing. Under the Consent Decree, MIT will caption new video or audio content posted to a Covered MIT Webpage on or after 60 days from final Court approval of this Consent Decree and will provide captions for existing video or audio content posted to a Covered MIT Webpage prior to December 1, 2019 upon request within seven business days. Additionally, MIT has agreed: (1) to provide industry-standard live captioning for events that are live-streamed by MIT Institute Events and to add captions to any such video or audio content that is later posted to a Covered MIT Webpage and available to the public; (2) to provide appropriate training on captioning audio and video content; and (3) to caption certain content posted between January 1, 2019 and the date 60 days after the effective date, without request, over the course of a one-year period. Class Counsel Arlene Mayerson, based on her decades of experience in disability rights and specifically Deaf rights, is of the opinion that the result of the settlement is excellent. *See* Declaration of Arlene Mayerson ("Mayerson Decl."), ¶¶ 2-8, attached as Exhibit 5. Where, as here, the plaintiffs "ha[ve] obtained excellent results," they "should recover a fully compensatory fee." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983).

    C.    <u>Plaintiffs' Requested Award of Fees and Costs is Reasonable</u>

As set forth in the Consent Decree, MIT has agreed to pay Plaintiffs' attorneys' fees and costs in an amount up to $1,050,000. *See* Dkt. 195-1 at 10. Plaintiffs seek an award of this full amount for two primary reasons.

First, the amount of fees Class Counsel now seek was the subject of a negotiation conducted with the able assistance of Magistrate Judge Judith Dein. Thus, the parties' negotiation over the payment of fees and costs was guided by Judge Dein's even-handed

approach to reaching a reasonable award appropriate for this case and acceptable to both parties. Moreover, this figure was reached after the parties had already agreed on the substance of virtually all the other settlement terms. This amount reflects a compromise reached with the assistance of Judge Dein and constitutes an amount that MIT is prepared to pay as part of the overall settlement of this action

Second, Class Counsel's combined lodestar, based on detailed contemporaneous time records, for work performed in this case through approximately spring 2020 is $2,245,146.40, exceeding the amounted requested in the instant Motion.[6] This lodestar is based on Class Counsel's usual and customary hourly rates. *See* Class Counsel Declarations, Exs. 1-6.[7] These rates have been approved for payment by federal courts and/or administrative tribunals across the country for Class Counsel's work on other litigation. *See, e.g.*, Sellers Decl. ¶ 12, Ex. 4. However, in order to settle this action and obtain the relief it provides to the Class now, rather than years from now, Plaintiffs agreed to accept from MIT a payment of attorneys' fees in the amount of $1,050,000, utilizing adjusted rates and resulting in more than a 45 percent reduction of the lodestar Class Counsel generated in this case across more than four years of litigation.

For similar reasons, Plaintiffs' costs are reasonable. During the four-year life cycle of this case, encompassing pre-suit investigation, briefing on multiple dispositive motions, active discovery, multiple rounds of mediation, comprehensive factual investigation and work with experts, Plaintiffs incurred costs totaling $83,264.38. *See generally* Class Counsel Declarations, Exs. 1-6.

---

[6] As explained *infra*, Plaintiffs' litigation costs are approximately an additional $84,000.

[7] Class Counsel detail their qualifications, the work performed in this case and the particular lodestar and costs accrued by each organization in the respective Declarations. *See generally* Class Counsel Declarations, Exs. 1-6.

Class Counsel now seek the reimbursement of these case expenses that were advanced to prosecute this action. As negotiated during the mediation conducted by Judge Dein, MIT agreed to pay, and Plaintiffs agreed to accept, a total award of $1,050,000, which subsumed Plaintiffs' costs of approximately $84,000.

Accordingly, the requested payment to Class Counsel is fair and reasonable.

### IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court to grant the Motion and award them payment of reasonable attorneys' fees and costs in the amount of $1,050,000. Detailed, contemporaneous time records maintained by Class Counsel reflecting time spent litigating this matter will be made available for the Court's review, if further information is necessary.

Dated: May 5, 2020

Respectfully submitted,

**PLAINTIFFS:**

By: /s/ Joseph M. Sellers
Joseph M. Sellers (*pro hac vice*)
Shaylyn Cochran (*pro hac vice*)
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave NW, Fifth Floor
Washington DC 20005
Tel.: 202.408.4600
jsellers@cohenmilstein.com
scochran@cohenmilstein.com

Amy Farr Robertson (*pro hac vice*)
CIVIL RIGHTS EDUCATION AND ENFORCEMENT CENTER
104 Broadway, Suite 400
Denver, CO 80203
Tel.: 303.757.7901
arobertson@creeclaw.org

Thomas P. Murphy (BBO# 630527)
DISABILITY LAW CENTER, INC.
32 Industrial Drive East
Northampton, MA 01060
Tel.: 413.584.6337
tmurphy@dlc-ma.org

Tatum A. Pritchard (BBO# 664502)
DISABILITY LAW CENTER, INC.
11 Beacon Street, Suite 925
Boston, MA 02108
Tel.: 617.723.8455
tpritchard@dlc-ma.org

Arlene Mayerson (*pro hac vice*)
Carly Myers (*pro hac vice*)
DISABILITY RIGHTS EDUCATION AND DEFENSE FUND, INC.
3075 Adeline Street Suite 210
Berkeley, CA 94703
Tel: 510.644.2555
amayerson@dredf.org
cmyers@dredf.org


Howard Rosenblum (*pro hac vice*)
NATIONAL ASSOCIATION OF THE DEAF
8630 Fenton Street, Suite 820
Silver Spring, MD 20910
howard.rosenblum@nad.org

***Class Counsel***

## CERTIFICATE OF SERVICE

I, Joseph M. Sellers, hereby certify that a copy of the foregoing document and associated declarations, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies shall be served by first class mail postage prepaid on all counsel who are not served through the CM/ECF system on May 5, 2020.

/s/ *Joseph M. Sellers*