UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NATIONAL ASSOCIATION OF THE DEAF, on behalf of its members, C. WAYNE DORE, CHRISTY SMITH, LEE NETTLES, on behalf of themselves and a class of similarly situated persons,<br><br>            Plaintiffs,<br><br>     v.<br><br>MASSACHUSETTS INSTITUTE OF TECHNOLOGY,<br><br>            Defendant. | Civil Action No. 15-30024-KAR |

**PLAINTIFFS' RESPONSE TO OBJECTIONS AND
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

**I.   INTRODUCTION**

Plaintiff National Association of the Deaf ("NAD") as well as Plaintiffs C. Wayne Dore, Christy Smith, and Lee Nettles (collectively, "Plaintiffs") on behalf of themselves and similarly situated individuals reached a Settlement – memorialized in a Consent Decree, Dkt. 195-1 – with Defendant Massachusetts Institute of Technology ("MIT") to fully and finally resolve this action. On February 18, 2020, Plaintiffs moved for preliminary approval of the Settlement and for certification of the class for settlement purposes. Dkt. 194. On March 27, 2020, the Court issued an order certifying the proposed class for settlement purposes ("Settlement Class"), appointing the undersigned attorneys as Class Counsel, and granting preliminary approval of the Settlement. Dkt. 209.

The Court-approved Notice of Proposed Settlement of Class Action Lawsuit ("Notice"), Dkt. 195-2, was issued in conformity with the Court-approved notice plan on or before the April

7, 2020 deadline established by the Court, Dkt. 209 (referencing "The proposed notice and the jointly proposed plan for dissemination of the proposed notice" which had been submitted to the Court, Dkt. 195-2 and 195-3).

As required by the Notice Plan, Class Counsel established a website providing a full copy of the Notice in English and American Sign Language, and the four nonprofit organizations serving as Class Counsel (the Civil Rights Education and Enforcement Center, the Disability Law Center, the Disability Rights Education and Defense Fund, and the National Association of the Deaf) posted a link to the case website on their respective websites and distributed it to their mailing lists. These four organizations also emailed a copy of the Notice to relevant nonprofit organizations and agencies whose members or constituents include and/or whose work is relevant to people who are deaf or hard of hearing. Additionally, for six weeks, MIT posted a link to the Notice on key webpages within its domain.

The Notice contained several avenues by which class members could contact Class Counsel for additional information: a videophone number; a conventional phone number; a dedicated email address; and street addresses. Class Counsel received several voicemail messages and returned the calls only to have to leave voicemails for the callers. None were returned. Class Counsel also received several emails, each demonstrating that the author believed the settlement to include damages or to require an opt-in or opt-out. Class Counsel responded to clarify that the Settlement did not have these features and heard nothing further from any of these individuals.

Thirty-one objections to the proposed Consent Decree were filed with the Court. As set forth below, nothing in those objections ultimately calls into question the fairness, reasonableness, or adequacy of the proposed Consent Decree, qualities recognized by the Court

in the order granting preliminary approval. Dkt. 209 at 5. Accordingly, Plaintiffs respectfully ask the Court to overrule the objections and grant final approval to the Settlement.

II. **THE OBJECTIONS DO NOT RAISE MERITORIOUS QUESTIONS CONCERNING THE FAIRNESS, REASONABLENESS, OR ADEQUACY OF THE PROPOSED CONSENT DECREE.**

The deadline to submit objections to the settlement was May 19, 2020. Dkt. 209 at 10. Thirty-one objections filed by 27 objectors[1] were filed with the Court. Thirty objections were filed through the Court's website (https://public.mad.uscourts.gov/FairnessHearing.html) and were generally between one word and several paragraphs long. *See* Fairness Hearing Objections (May 21, 2020), attached as Exhibit 1.[2] One additional objection was filed by mail. Objection of Edward W. Orr, Dkt. 211 ("Orr Objection").

None of the objections constitute grounds on which to deny final approval of the proposed Consent Decree. Indeed, most of the objections do not appear to have any bearing on, or relation to, the terms of the proposed Consent Decree. Plaintiffs address each objection below.

The first submission to the Court's website was not an objection, but an expression of gratitude and support from Barbara J. Wood, a current member of the Massachusetts Attorney General's Disability Rights Advisory Committee and former Commissioner of the Massachusetts Commission for the Deaf and Hard of Hearing. *See* Exhibit 1 at 1.[3]

---

[1] Vaclav Jachim made three objections, and Khushboo Tayal made two objections.

[2] Plaintiffs understand from the Court that the entire substance of the objections received through the Court's web portal are set forth in Exhibit 1.

[3] *See Attorney General Healey announces creation of disability rights advisory committee*, Office of Attorney General Maura Healey (July 22, 2015), https://www.mass.gov/news/attorney-general-healey-announces-creation-of-disability-rights-advisory-committee. Ms. Wood did not claim these affiliations in her submission, nor to speak for these organizations. However, her prominence and experience in the Deaf community gives her support significant weight.

None of the online objections addressed the substance of the Consent Decree:

1. <u>Jennifer Dyson</u> – Ms. Dyson's objection is "Deaf." Ex. 1, at 1. Without further explanation, Plaintiffs do not understand the content of Ms. Dyson's objection. It appears to have no bearing on the terms of the proposed Consent Decree or its fairness.

2. <u>Sabrina L. Cromartie</u> – Ms. Cromartie's objection is "3:15-cv-30024-KAR." Ex. 1, at 1. The objection simply contains this case's docket number; no grounds for the objection are included. It therefore appears to have no bearing on the terms of the settlement or their fairness.

3. <u>Natasha Hayes</u> – Ms. Hayes' objection is "Messed up." Ex. 1, at 1. Without further detail, Plaintiffs do not understand what Ms. Hayes' objection to the Consent Decree is. It appears to have no bearing on the terms of the settlement or their fairness.

4. <u>Chantoria Quimbley</u> – Ms. Quimbley's objection is "N/a." Ex. 1, at 1. There is no content to this objection, and it thus appears to have no bearing on the terms of the settlement or their fairness.

5. <u>Jennifer Dyson</u> – Ms. Dyson's objection is "Hearing." Ex. 1, at 1. Plaintiffs do not understand the content of the objection, and it appears to have no bearing on the terms of the settlement or their fairness.

6. <u>Benita Austin</u> – Ms. Austin's objection is "Can't Hear Good." Ex. 1, at 1. Without further detail, Plaintiffs do not understand the objection. It appears to have no bearing on the terms of the settlement or their fairness.

7. <u>Melissa Gibson</u> – Ms. Gibson's objection is "Denied access." Ex. 1, at 1. Ms. Gibson appears to misunderstand the purpose of the Court's objection form and instead is attempting to report that she was "[d]enied access" to something. If Mr. Gibson is referring to MIT Content, then the relief set forth in the proposed Consent Decree is intended to improve access to such content via captioning. Therefore, this comment does not appear to be calling into question the fairness of the proposed Consent Decree or its terms.

8. <u>Andrew Gibson</u> – Mr. Gibson's objection is "Was not allowed access to website." Ex. 1. Mr. Gibson appears to misunderstand the purpose of the Court's objection form and instead is attempting to report an issue accessing a website. If Mr. Gibson is referring to MIT Content, then the relief set forth in the proposed Consent Decree is intended to improve access to such content via captioning. Therefore, this comment does not appear to be calling into question the fairness of the proposed Consent Decree or its terms.

9. <u>Alina Sabou</u> – Ms. Sabou's objection is "Pls; add me" [sic]. Ex. 1, at 1. The objector appears to be requesting to be included within the class action settlement,

not objecting to the Consent Decree. It therefore does not call into question the fairness of the proposed Consent Decree or its terms.

10. <u>Vaclav Jachim</u> – Mr. Jachim submitted three objections. Ex. 1, at 2–5. The first objection is not written in any known language (*e.g.,* the first phrase says "VÃ¡Å¾enÃ½ soudÄ›"). Ex. 1, at 2–3. The second and third objections are identical and state that "[t]here is no Yahoo Internet platform or no platform available, so it is not possible, nor is it stated in the Terms of Service that it is possible to have movies, webinars, videos, videos from all children from all over the world." Ex. 1, at 4–5. The relief set forth in the proposed Consent Decree is intended to provide access to video and audio files in MIT Content; the proposed Consent Decree does not relate to the Yahoo platform, and the remainder of Mr. Jachim's objections are unintelligible. The objections, therefore, appear to have no bearing on the terms of the settlement or their fairness.

11. <u>Dieu</u> – The objection is "Google." Ex. 1, at 5. The content of this objection is unintelligible, and it appears to have no bearing on the terms of the settlement or their fairness.

12. <u>Darrale James</u> – Mr. James' objection is "I want to make a claim due to hearing loss." Ex. 1., at 5. Mr. James appears to misunderstand the purpose of the Court's objection form. His objection, if it was intended to be that, appears to have no bearing on the terms of the settlement or their fairness.

13. <u>Linda Love</u> – Ms. Love's objection is "On Feb 20 2017 I tried to access this site and was unable to do so" [sic]. Ex. 1, at 6. Ms. Love appears to misunderstand the purpose of the Court's objection form and instead is attempting to report an issue accessing either MIT's website or the Court's website. If Ms. Love is referring to MIT Content, then the relief set forth in the proposed Consent Decree is intended to improve access to such content via captioning. Therefore, this comment does not appear to be calling into question the fairness of the proposed Consent Decree or its terms.

14. <u>Sade Jones</u> – The objection is "Donâ€™t agree" [sic]. Ex. 1, at 6. The objector appears to be stating that he, she, or they do not agree with the Consent Decree; however, the objector does not state anything further. Without more detail, Plaintiffs cannot evaluate the grounds for the objection. It appears to have no bearing on the terms of the settlement or their fairness.

15. <u>Kimberly Green</u> – Ms. Green's objection simply states her name, "Kimberly Green." Ex. 1, at 6. It appears to have no bearing on the terms of the settlement or their fairness.

16. <u>Khushboo Tayal</u> – The same objection, "Not able to access MITâ€™s website and not able to read content" [sic], was made twice by this objector. Ex. 1, at 6. To the extent Ms. Tayal is attempting to report an issue accessing MIT's website, then she appears to misunderstand the purpose of the Court's objection form. If

    she is referring to the reading of captions of video and audio files in MIT Content, then the relief set forth in the proposed Consent Decree is intended to improve access to this content via captioning. If Ms. Tayal is referring to written content within MIT's domain, the proposed Consent Decree does not purport to change written content within MIT's domain. This objection, therefore, has no bearing on the terms of the settlement or their fairness.

17. <u>Nitin Goel</u> – The objection is "Not able to access MITâ€™s website and not able to read content" [sic]. Ex. 1, at 6. To the extent Mr. Goel is attempting to report an issue accessing MIT's website, then he appears to misunderstand the purpose of the Court's objection form. If Mr. Goel is referring to the reading of captions of video and audio files in MIT Content, then the relief set forth in the proposed Consent Decree is intended to provide access to such content via captioning. If Mr. Goel is referring to written content within MIT's domain, the proposed Consent Decree does not purport to change written content within MIT's domain. This objection, therefore, has no bearing on the terms of the settlement or their fairness.

18. <u>Jose Ruiz</u> – Mr. Ruiz's objection is "I would to be part of the settlement" [sic]. Ex. 1, at 6. The objector appears to be requesting to be included within the class action settlement, not objecting to the Consent Decree. It therefore appears to have no bearing on the terms of the settlement or their fairness.

19. <u>Sherry D. Gill</u> – Ms. Gill's objection is "I am one that is hard of hearing. I also object." Ex. 1, at 6. Without further detail, Plaintiffs do not understand what Ms. Gill's objection to the Consent Decree is. It appears to have no bearing on the terms of the settlement or their fairness.

20. <u>Kara Mccullum</u> – Ms. Mccullum's submitted two objections that state "I'm not able to ride in a car a long period of time" [sic] and "Not to travel at all" [sic]. Ex. 1, at 6. The content of the objection does not appear to have any relation to the Consent Decree, and therefore it appears to have no bearing on the terms of the settlement or their fairness.

21. <u>Kayla Watson</u> – Ms. Watson's objection is "Na" [sic]. Ex. 1, at 6. Plaintiffs do not understand the content of Ms. Watson's objection, and it appears to have no bearing on the terms of the proposed Consent Decree or its fairness.

22. <u>W.</u> – The objection is "ote t n l s" [sic]. Ex. 1, at 6–7. The content of the objection is unintelligible, and it appears to have no bearing on the terms of the settlement or their fairness.

23. <u>M.K.</u> – The objection is "ou l" [sic]. Ex. 1, at 7. The content of the objection is unintelligible, and it appears to have no bearing on the terms of the settlement or their fairness.

24. <u>Matthew Lewis</u> – The objection is "I think what they did is wrong." Ex. 1, at 8. Without further detail, Plaintiffs do not understand what Mr. Lewis' objection to

>    the Consent Decree is, or whether he is stating that he believes what the Plaintiffs or the Defendants did was "wrong." Either way, it appears to have no bearing on the terms of the settlement or their fairness.
>
> 25. D.W. – The objection is "certified m 7015 00 wi ot" [sic]. Ex. 1, at 8. The content of the objection is unintelligible, and it appears to have no bearing on the terms of the settlement or their fairness.

The Orr Objection essentially makes three points: (1) that the Consent Decree does not prevent MIT from taking content down from the internet; (2) that the release sweeps too broadly; and (3) that the parties have omitted language relating to California Civil Code Section 1542 that had been included in the consent decree in the related case of *National Association of the Deaf v. Harvard University*, No. 3:15-cv-30023-KAR ("*Harvard*"). Plaintiffs address these points in turn.

In support of his first objection, Mr. Orr points to the events following an order by the U.S. Department of Justice that the University of California Berkeley ("Berkeley") make its online content accessible. Orr Objection at 38-45. Mr. Orr characterizes these events – based press coverage – as **"BERKELEY WILL DELETE ONLINE CONTENT"** and **"BERKELEY MAY REMOVE ONLINE CONTENT RATHER THAN COMPLYING WITH THE LAW."** *Id.* at 17 (emphasis in original). The truth is more mundane: Berkeley limited access to older online content to university students and faculty – who maintain rights under Titles I[4] and II[5] of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act[6] to challenge inaccessible content – while focusing on making recent and

---

[4] Title I prohibits discrimination on the basis of disability in employment. *See* 42 U.S.C. § 12111 *et seq*.

[5] Title II prohibits discrimination on the basis of disability by public entities including state universities such as Berkeley. 42 U.S.C. § 12131 *et seq*.

[6] Section 504 prohibits discrimination on the basis of disability by recipients of federal financial assistance. 29 U.S.C. 794.

7

future public content accessible.[7] Thus, Berkeley's actions, while not ideal, are far from the lawless catastrophe portrayed by Mr. Orr.

Importantly, the Consent Decree commits MIT to a regime far superior to the path chosen by Berkeley. MIT commits to caption all MIT Content[8] starting as soon as possible but no later than 60 days from approval of the Consent Decree. Additional recent content will be captioned within one year of that date, and older content will be captioned upon request. Consent Decree Section 4(d). While MIT has the option to take down *legacy* content rather than caption it, Consent Decree Sections 4(a)(ii) and (iii), its obligation to caption MIT Content going forward is unqualified, *id.* Section 4(a)(i). Although it may respond to a "Cure Request" to remedy a violation of Section 4(a)(i) by removing content, it also commits not to "rely on the Cure Process to circumvent the requirements of Section 4 of this Consent Decree." *Id.* Section 5(b). Finally, with respect to all content – pre- and post-approval – MIT has committed to "engage in a good-faith effort to Caption the MIT Content before removing it." *Id.* Thus any systematic removal of MIT Content to avoid captioning – as Mr. Orr characterizes the Berkeley situation – would constitute a violation of the Consent Decree.

---

[7] *See, e.g. Campus message on Course Capture video, podcast changes*, Berkeley News (March 1, 2017) https://news.berkeley.edu/2017/03/01/course-capture/ ("instead of focusing on legacy content that is 3-10 years old, much of which sees very limited use, we will work to create new public content that includes accessible features.").

[8] Defined to include as audio or video content that appears on Covered MIT Webpages and: a) is created or developed in whole or in part by any faculty or employee of MIT acting within the scope of his or her employment; b) is created by any MIT Sponsored Student Group (as defined by MIT's Association of Student Activities) acting within the scope of its organizational mission; or c) is created for one of the exempted webpages and is subsequently reposted to a Covered MIT Webpage by any faculty or employee of MIT acting within the scope of his or her employment. Consent Decree, Dkt. 195-1, Section 2(f). "Covered MIT Webpages" is defined broadly, encompassing any public webpages within the MIT.edu domain, and corresponding public platforms such as YouTube, Vimeo, and Soundcloud channels operated by MIT, with certain specific exceptions. "Covered MIT Webpages" also includes all MIT MOOCs posted going forward through MITx and MIT OpenCourseWare. *Id.* Section 2(d).

Mr. Orr's second objection is that the Consent Decree releases claims (1) held by individuals outside the class; and (2) that are not relevant to the suit. Orr Objection at 45-49. This is inaccurate. Mr. Orr reproduces the release from the Consent Decree, emphasizing the language he is concerned about, but ignoring the language that imposes precisely the limits he claims are missing. *Id.* at 48. The release is made by "Plaintiffs, individually and on behalf of all members of the Settlement Class" and extends only to claims

> based upon Title III of the ADA, the Rehabilitation Act of 1973, and/or other federal, state, or local laws or regulations regarding accessibility, for the lack of captioning or accurate captioning of online audio or video content for the general public that is produced, created, hosted, linked to, or embedded by the Releasees ... .

Consent Decree, Section 7. That is, it is precisely limited to members of the Settlement Class for claims relating to the subject of the lawsuit: lack of captioning or inaccurate captioning of publicly-available audio or video content.

Mr. Orr's third objection is that the present Consent Decree omits language relating to California Civil Code section 1542 that was included in the *Harvard* Consent Decree. Orr Objection at 49-51. While the language relating to section 1542 differs in the two Consent Decrees, both documents quote the statutory language, and have materially-similar introductory and release acknowledgement language. *Compare* MIT Consent Decree Section 7(b) *with Harvard* Consent Decree Section X. These differences are not material and the effect of the language is the same in both. Indeed, in his objection, Mr. Orr does not explain why he believes any difference in wording to be material. *See* Orr Objection at 51. In any event, Mr. Orr does not have standing to raise this objection: the language in question applies only to the named plaintiffs, not to the class. Consent Decree Section 7(b) ("Plaintiffs hereby expressly and knowingly waive . . ."). *Cf. Hill v. State St. Corp.*, 794 F.3d 227, 231 (1st Cir. 2015) (holding

9

that objectors did not have standing where, were the objection successful, it would not benefit them). Plaintiffs do not object, however, to the inclusion of the language from the *Harvard* consent decree.

Finally, Mr. Orr asserts that he attempted to submit his objection using the Court's online form (https://public.mad.uscourts.gov/FairnessHearing), but was unable to do so. Orr Objection at 5-10. Aside from whether the online vehicle for lodging objections was in working order, which is addressed below, the notice the class also provided that objections could be lodged by submission to the clerk through the mail, as Federal Rules of Civil Procedure 23 has provided since its adoption. *See* Dkt. 195-2 at 3. Regardless of whether the Court's online form was operational at all times during the notice period, therefore, anyone wishing to object to the settlement could have – as Mr. Orr did, *see* Orr Objection at 1 – lodged an objection by mail.

Plaintiffs cannot verify one way or another whether the Court's on line form was operational throughout the notice period. However, the textual submissions on the Court's site by others supporting and objecting to the settlement demonstrate that others found the site to have been in working order. *See* Exhibit 1 at 1, 4, 6. In addition, as noted above, *see supra* at 2, the Notice also included several avenues for class members to request additional information.[9]

---

[9] Mr. Orr also attached to his objection a copy of a letter addressed to Joseph Sellers at Cohen Milstein Sellers & Toll ("Cohen Milstein") calling to his attention the difficulties Mr. Orr claimed to have had with using the Court's site to lodge an objection. Orr Objection, Ex. S. The letter was dated April 19, 2020. Since the middle of March, 2020, Cohen Milstein's Washington, D.C. Office, to which the letter was addressed, has been the subject of a stay at home order issued by local government. *See* Mayor's Order 2020-053: Closure of Non-Essential Businesses and Prohibition on Large Gatherings During Public Health Emergency for the 2019 Novel Coronavirus (COVID-19) (March 24, 2020), available at https://coronavirus.dc.gov/sites/default/files/dc/sites/mayormb/release_content/attachments/Mayor%27s%20Order%202020-053%20Closure%20of%20Non-Essential%20Businesses%20and%20Prohibiti....pdf. As a result, Mr. Sellers and others who normally work in the D.C. Office have been working remotely. Nonetheless, the firm has designated a member of the staff to come to the office several times each week to retrieve and

10

In sum, the objections do not call into question the proposed Consent Decree's fairness, adequacy, and reasonableness and thus none provide grounds for denying the present motion for final approval.

### III. THE PROPOSED CONSENT DECREE REMAINS FAIR, REASONABLE, AND ADEQUATE, AND FINAL APPROVAL SHOULD BE GRANTED

The First Circuit has counseled that "[w]hen sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement." *City P'ship Co. v. Atlantic Acquisition Ltd.*, 100 F.3d 1041, 1043 (1st Cir. 1996). Likewise, the fairness of a settlement should be considered with an appreciation of the strong judicial policy favoring the resolution of class actions. *See, e.g., Nat'l Ass'n of Chain Drug Stores v. New England Carpenters' Health Benefits Fund*, 582 F.3d 30, 44 (1st Cir. 2009). Final approval is appropriate when a Court finds that a settlement is "fair, reasonable, and adequate," based upon an assessment of whether: (i) the class representatives and class counsel adequately represented the class; (ii) the proposed settlement was negotiated at arm's length; (iii) the relief provided for the class was adequate; and (iv) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

As explained above, nothing in the objections calls into question the proposed Consent Decree's satisfaction of these factors, which the Court previously recognized. *See* Dkt. 209; *see also* Plaintiffs' Unopposed Motion to Certify the Class for Settlement Purposes and for Preliminary Approval, Dkt. 194, which Plaintiffs incorporate by reference. The proposed Consent Decree arose out of arm's-length negotiations during mediation before Magistrate Judge

---

distribute mail that may have been delivered. Neither Mr. Sellers, nor Shaylyn Cochran who also serves as counsel for the class in this case, ever received a copy of the letter that Mr. Orr attached. Upon inquiry of the D.C. Office administration staff, moreover, they have confirmed that they have not received a copy of the letter attached as Exhibit S.

11

Judith G. Dein and occurred after the Parties had exchanged substantial discovery and briefed several significant issues bearing on the litigation. The resulting proposed Consent Decree provides substantial benefits to the Settlement Class now, while avoiding the delay, risk, and expense inherent in the continued litigation of this nearly five-year-old action.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs ask the Court to overrule the objections, grant final approval of the proposed Consent Decree, award Plaintiffs' payment of reasonable attorneys' fees and costs in the amount of $1,050,000[10], and enter final judgment in this matter accordingly.

/

/

/

/

/

/

/

/

/

/

/

/

/

---

[10] *See* Plaintiffs' Unopposed Motion for Award of Fees and Costs, Dkt. 210 (explaining the basis for Plaintiffs' requested award of fees and costs).

Dated: May 26, 2020                                  Respectfully submitted,

**PLAINTIFFS:**

By: /s/ Joseph M. Sellers
Joseph M. Sellers (*pro hac vice*)
Shaylyn Cochran (*pro hac vice*)
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave NW, Fifth Floor
Washington DC 20005
Tel.: 202.408.4600
jsellers@cohenmilstein.com
scochran@cohenmilstein.com

/s/ Amy Farr Robertson
Amy Farr Robertson (*pro hac vice*)
CIVIL RIGHTS EDUCATION AND ENFORCEMENT CENTER
1245 E. Colfax Ave., Suite 400
Denver, CO 80218
Tel.: 303.757.7901
arobertson@creeclaw.org

Thomas P. Murphy (BBO# 630527)
DISABILITY LAW CENTER, INC.
32 Industrial Drive East
Northampton, MA 01060
Tel.: 413.584.6337
tmurphy@dlc-ma.org

Tatum A. Pritchard (BBO# 664502)
DISABILITY LAW CENTER, INC.
11 Beacon Street, Suite 925
Boston, MA 02108
Tel.: 617.723.8455
tpritchard@dlc-ma.org

Arlene Mayerson (*pro hac vice*)
Carly A. Myers (*pro hac vice*)
DISABILITY RIGHTS EDUCATION AND
DEFENSE FUND, INC.
3075 Adeline Street Suite 210
Berkeley, CA 94703
Tel:  510.644.2555
amayerson@dredf.org
cmyers@dredf.org

Howard Rosenblum (*pro hac vice*)
NATIONAL ASSOCIATION OF THE
DEAF
8630 Fenton Street, Suite 820
Silver Spring, MD 20910
howard.rosenblum@nad.org

***Attorneys for Plaintiffs***

## **CERTIFICATE OF SERVICE**

 I, Amy Farr Robertson, hereby certify that on May 26, 2020, a copy of the foregoing document was filed through the CM/ECF system and thus will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and that a paper copy of this document was served by FedEx, next day delivery, on:

Edward W. Orr
122 Ridge Road
Terryville, CT 06786

                 /s/ *Amy Farr Robertson*